Jasen, J.
This case, before us upon remand from the Supreme Court of the United States (400 U. S. 16), raises the issue of whether Waller v. Florida (397 U. S. 387) prohibits defendant’s conviction for criminal contempt (former Penal Law, § 600, subd. 6) for failure to testify before a Kings County Grand Jury after he had previously been cited for judicial contempt (Judiciary Law, § 750, subd. A, par. 3) for disobeying a court-order to testify before that same Grand Jury.
Defendant was called to testify before a Kings County Grand Jury investigating the use of legitimate business enterprises as a cover for various criminal activities. He thereupon refused to testify and continued to maintain his silence after being granted full immunity. Defendant was then taken before a Supreme Court Justice and ordered to return before the Grand Jury and testify. After his subsequent refusal to obey the mandate of the court, defendant was adjudged in contempt of court, pursuant to section 750 (subd. A, par. 3) of the Judiciary Law. Our court ultimately affirmed that conviction and defendant served a 30-day jail sentence therefor. (Matter of Koota v. Colombo, 17 N Y 2d 147, cert. den. 384 U. S. 1001.)
Thereafter, on October 10, 1966, appellant was indicted for criminal contempt, in violation of section 600 (subd. 6) of the former Penal Law, for failure to testify before the Grand Jury. On his original appeal, appellant argued that this subsequent indictment for criminal contempt, after being previously convicted of judicial contempt, violated the constitutional prohibition against twice being placed in jeopardy for the same offense. We rejected that contention (25 NY 2d 641) upon the authority of People v. Costello (21 N Y 2d 967) and section 602 of the former Penal Law, which stated: “ Punishment for a contempt, as prescribed in article nineteen of the judiciary law, does not bar an indictment for the same offense; but where a person who has been so punished is convicted on such an indictment, the court, in sentencing him, must take into consideration the previous punishment.”
However, the Supreme Court remanded this case to us to reconsider in light of Waller v. Florida (397 U. S. 387), decided subsequent to our earlier decision. We conclude that the Waller *3 case does not affect our holding and that we should adhere to our original decision.
In Waller, the petitioner was one of a number of persons who removed a canvas mural from the City Hall of St. Peters-burg, Florida, and carried it through the streets. For this escapade, he was charged by the City of St. Petersburg with destruction of city property and disorderly breach of the peace. He was found guilty on both counts in the municipal court and sentenced to 180 days’ imprisonment. Thereafter, petitioner was charged by information by the State of Florida with grand larceny. It was conceded that this information was based upon the same acts as the violation of the two city ordinances. The Supreme Court held that this second prosecution constituted double jeopardy violative of the Fifth and Fourteenth Amendments, specifically holding: “ ‘ [I]f a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would * * * be a bar to the prosecution of such person in the proper state court.’ ” (397 H. S., at p. 395.)
Waller is inapplicable to the facts of this case for several reasons. In our view, the holding in Waller can only mean that a person cannot be tried by the State after previously being convicted for the same acts by a municipality. There is no such State-municipal dichotomy involved in the instant case. The essential meaning of the Waller case is an abolition of the old fiction that the State and its municipalities are really separate entities who may punish a person twice for the same crime. That case merely recognizes that a municipality is but an arm of the State when meting out criminal punishment.
A further distinguishing factor arises from the fact that Waller involved two separate punishments for the same act. In the present case, however, two distinct acts are being punished—refusal to testify before the Grand Jury and a separate refusal to obey the lawful mandate of a Supreme Court Justice. Each act, by itself, could properly be the subject of punishment. For instance, if defendant had belatedly obeyed a court order to return to the Grand Jury and testify, he still could conceivably be prosecuted for his initial wrongful refusal to testify before the Grand Jury.
*4 Moreover, it must be noted that the punishment under the Penal Law and the citation for contempt of court (under the Judiciary Law) are designed to serve different purposes. The former protects the interest of the State to obtain evidence which will benefit the community as a whole, while the latter serves to protect the integrity and vindicate the power of our courts. Consequently, we are faced with separate acts, meriting separate punishment, for distinct purposes—a far different situation from Waller where there was multiple punishment for the same act.
It should also he noted that the prior commitment to civil jail, pursuant to section 750 of the Judiciary Law, was not the result of a criminal prosecution. This former proceeding was civil in nature and, hence, the doctrine of former jeopardy is not applicable. (See Matter of Second Additional Grand Jury of County of Kings v. Cirillo, 16 A D 2d 605, 607, affd. 12 N Y 2d 206.)
The Supreme Court has also consistently distinguished between the two types of contempt sentences that are present here. (Shillitani v. United States, 384 U. S. 364, 369; Gompers v. Buck Stove & Range Co., 221 U. S. 418, 441.) In the noncriminal adjudication of contempt, imprisonment ‘ ‘ is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do.” (Gompers v. Buck Stove & Range Co., supra, at p. 442.) Likewise, commitment pursuant to section 750 of the Judiciary Law ‘ ‘ is remedial and coercive, and the recalcitrant witness holds the key to his freedom.” (People ex rel. Valenti v. McCloskey, 6 N Y 2d 390, 399.) By contrast, puishment for the “ crime ” of contempt is designated to vindicate the authority of the offended agency. (Gompers v. Buck Stove & Range Co., supra, at p. 443.) Thus, the two contempts are basically of a differing character. Judicial contempt, punished by a remedial and coercive sentence, is not considered a crime in the constitutional sense. Hence, it may he punished without grand jury indictment or jury trial. (Shillitani v. United States, supra; Levine v. United States, 362 U. S. 610, 615-617.)
Indeed, the Supreme Court has apparently sanctioned the very procedure followed in the instant case :
“ Though there was but one contempt, imposition of the civil sentence for the refusals of June 26 is no bar *5 rier to criminal punishment for the refusals of June 30. The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem. Rex Trailer Co. v. United States, 350 U. S. 148, 150 (1956) ; United States v. United Mine Workers, 330 U. S. 258, 299 (1947). [Footnote omitted.] Clearly, if the civil and criminal sentences could have been imposed simultaneously by the court on June 26, as the United Mine Workers case holds, it scarcely can be argued that the court’s failure to invoke the criminal sanction until June 30 was fatal to its criminal contempt powers. Indeed, the more salutary procedure would appear to be that a court should first apply coercive remedies in an effort to persuade a party to obey its orders, and only make use of the more drastic criminal sanctions when the disobedience continues.” (Yates v. United States, 355 U. S. 66, 74-75.)
In sum, the defendant was not placed in double jeopardy since the contempt provision of the Judiciary Law and the Penal Law require separate acts and have a different basis and purpose, thereby rendering the decision in Waller inapplicable.
Accordingly, we adhere to our original decision of affirmance dated October 30, 1969.
Chief Judge Fuld and Judges Burke, Scileppi, Bergak, Breitel and Gtibsok concur.
Upon reargument: Decision of October 30, 1969 adhered to.