[Crim. No. 27138. Second Dist., Div. One. Aug. 5, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
MARIO LOMBARDO, Defendant and Appellant.

## Counsel

Mario Lombardo, in pro. per., for Defendant and Appellant.

Stanley M. Roden, District Attorney, and Patrick J. McKinley, Deputy District Attorney, for Plaintiff and Respondent.

## Opinion

**LILLIE, Acting P. J.**—After his plea of former jeopardy was rejected, Mario Lombardo was convicted in the Municipal Court of the Santa Barbara-Goleta Judicial District of a violation of section 166, Penal Code (willfully and unlawfully refusing to answer material questions after being sworn in the case of People v. Joszef Unszusz after having been given immunity). He was sentenced to six months in the county jail and fined $500 but given credit for time previously served and the amount of

fine previously paid on a contempt order arising out of the same refusal to testify. On appeal to the Appellate Department of the Superior Court for Santa Barbara County the judgment was reversed and the trial court directed to dismiss the complaint. Thereafter the appeal was transferred to this court on certification pursuant to rules 61-69, California Rules on Appeal to determine the issue whether the double jeopardy clause of the Fifth Amendment of the United States Constitution bars a misdemeanor contempt prosecution brought under section 166, Penal Code against a party who previously has been found to be in contempt (§ 1209, subds. 5, 9, Code Civ. Proc.) and sentenced to a definite jail term for the same act or omission—refusing to answer questions put to him pursuant to an immunity order.

On February 20, 1974, a felony complaint was filed in the municipal court charging Joszef Unszusz with receiving certain stolen paintings. Defendant herein agreed to appear voluntarily as a prosecution witness in the preliminary hearing; when the prosecutor asked him if Unszusz had brought six paintings to his home between December 1 and December 26, 1973, he refused to answer on the ground it might tend to incriminate him. Later that day the superior court made an order granting defendant immunity from prosecution arising from his conduct with Unszusz between December 1 and December 26, 1973, and directing him to appear and answer questions concerning the acts and conduct of Unszusz between December 1 and December 26, 1973. Defendant returned to the witness stand and was asked whether he knew Unszusz; he refused to answer on the ground it might tend to incriminate him. Thereafter on advice of the court to propound questions within the scope of the immunity order, the prosecutor asked if defendant was present at a meeting with one Bartlett and Unszusz between December 1 and December 26, 1973; defendant's counsel advised the court that defendant would refuse to answer; defendant also refused to reveal whether he had met with Unszusz between December 1 and December 26, 1973, had a conversation with Deputy Kirkman concerning these meetings or whether he had ever seen the five stolen paintings which were then in the courtroom. The court advised defendant that if he did not answer the questions he would be found in contempt, and suggested that he discuss it with his counsel who was present; counsel again advised the court defendant would decline to testify. After defendant's counsel declined to offer any mitigating evidence the court found defendant in contempt for refusing to answer questions put to him after having been ordered to do so; he was sentenced to 5 days in the county jail and fined $500 payable in 30 days.

The following day defendant was charged in the municipal court with a violation of section 166, Penal Code and entered pleas of not guilty and once in jeopardy, and waived his right to a jury trial. At trial the transcript of the preliminary hearing and other documentary evidence including the immunity order were admitted in evidence by stipulation. The prosecutor called as a witness the judge who presided at the preliminary hearing of Unszusz; he testified that defendant had been found in contempt for simply refusing to answer questions propounded to him after being directed by court order to do so. The plea of former jeopardy was denied and defendant was found guilty as charged.

■ It is clear from the record that the object of the contempt proceeding in this case was to vindicate the dignity or authority of the court and thus the proceeding was criminal in character. (*Morelli* v. *Superior Court,* 1 Cal.3d 328, 333 [82 Cal.Rptr. 375, 461 P.2d 655].) The transcript of the oral proceedings on the contempt hearing discloses that Judge Gowans intended to and did treat the contempt strictly as a criminal contempt and punished defendant for failing to obey a lawful order of the court; there is no suggestion in the record that defendant was sentenced to compel compliance with any court order, only to punish him for the completed act of refusal to obey. The clerk's transcript shows an order compelling testimony entered March 4, 1974, signed by Honorable John T. Rickard, Judge of the Superior Court of Santa Barbara County whereby defendant was granted immunity and ordered to appear and answer questions regarding acts and conduct of Joszef Unszusz between December 1 and December 26, 1973; an order of March 4, 1974, signed by Honorable Arnold D. Gowans, Judge of the Municipal Court of the Santa Barbara-Goleta Judicial District finding defendant in contempt of court "because he refuses to answer questions put to him as ordered by the Superior Court under the Order Compelling Testimony GRANTED and filed this date by Superior Court;" and contempt order of March 4, 1974, signed by Judge Gowans reciting "Mario Lombardo did then and there refuse to answer questions put to him after being ordered to do so by me and Judge John T. Rickard of the Santa Barbara Superior Court for which conduct I did then and there, and do now, adjudge the said Mario Lombardo guilty of contempt of Court, and I hereby order him to spend 5 days in the County Jail and pay a fine of $500.00, payable within 30 days." There is nothing coercive about the contempt proceedings or the contempt order as in a civil contempt. As contrasted with a criminal contempt a civil contempt "has traditionally been viewed as non-punitive, for its purpose is only to

compel compliance with a lawful order of the court; petitioner, key to his jail cell in pocket [citation], can secure his own release at any time by following the court order. . . . [Citations.] . . . he can only be confined so long as the underlying litigation remains alive." (*In re Lifschutz,* 2 Cal.3d 415, 439, fn. 27 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *In re Farr,* 36 Cal.App.3d 577, 584 [111 Cal.Rptr. 649].) We hold that this particular contempt order was punitive in nature.

■ We also conclude that the contempt order invokes the jeopardy provision of the Fifth Amendment held applicable to the states through the Fourteenth Amendment of the United States Constitution (*Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056]; *Curry* v. *Superior Court,* 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345]), and the disposition of this case is controlled by the decision in *Colombo* v. *New York* (1972) 405 U.S. 9 [30 L.Ed.2d 762, 92 S.Ct. 756]). We adopt the following portion of the opinion of the Appellate Department of the Superior Court of the County of Santa Barbara.

"Initially, Colombo's jeopardy contention was rejected. *People* v. *Colombo,* 25 N.Y.2d 641; 254 N.E.2d 340 (1969). However, the Supreme Court vacated the judgment and remanded the case for consideration in light of *Waller* v. *Florida,* 397 U.S. 387; 90 S.Ct. 1184 (1970).[8] (*Colombo* v. *New York,* 400 U.S. 16; 91 S.Ct. 99 (1970).)

"On remand, the Court of Appeals adhered to its prior decision (*People* v. *Colombo,* 29 N.Y.2d 1; 271 N.E.2d 694 (1971)). The Court reasoned that two distinct acts were being punished, namely, refusal to testify before the Grand Jury and a separate refusal to obey the order of a Judge. The Court also reasoned that punishment under the Penal Law and contempt served two different purposes. The former protected the interest of the State to obtain evidence while the latter protected the integrity and vindicated the power of Courts.

"Finally, the Court of Appeals reasoned that the doctrine of double jeopardy was inapplicable since the contempt action was civil in nature. In support of its position, the Court of Appeals quoted from *Yates* v. *United States,* 353 U.S. 66, 74-75; 78 S.Ct. 128 (1957), where the Supreme Court had stated: 'The civil and criminal sentences served distinct

---

[8]In *Waller,* a defendant was convicted of destruction of city property, and disorderly conduct in violation of a city ordinance. The State then brought defendant to trial upon a charge of grand larceny. The Supreme Court held that since both prosecutions were based upon identical acts, the second trial would subject defendant to double jeopardy."

purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem (citations omitted).'

"The Supreme Court again granted certiorari, vacated judgment and remanded the case to the Court of Appeals. (*Colombo* v. *New York*, 405 U.S. 9; 92 S.Ct. 756 (1972).) The Supreme Court concluded that the original judgment was for criminal contempt since petitioner was sentenced to a definite term in jail, and ordered to pay a fine, and neither the prosecutor nor the trial Court considered his offer to testify to be sufficient to foreclose execution of the sentence. The Supreme Court also held that the Court of Appeals had erred when it concluded that the initial refusal to answer did not mature into a contemptuous act until the Judge overruled his objections and ordered him to testify.

"On remand, the Court of Appeals finally dismissed the indictment (*People* v. *Colombo*, 31 N.Y. 947; 293 N.E.2d 247 (1972)). The Court of Appeals suggested that although he could have been prosecuted for his initial refusal to testify before the Grand Jury, he could not be indicted for refusing to comply with the order directing him to testify. The Court noted that the evidence adduced to support the contempt charge and the later indictment were identical and that the elements of both offenses were the same."

Thus where as here the court order was punitive in nature and the element of both offenses the same, and the same evidence supported both offenses we conclude that the prosecution under section 166, Penal Code was barred by the double jeopardy clause of the Fifth Amendment of the United States Constitution. (*Colombo* v. *New York* (1972) 405 U.S. 9 [30 L.Ed.2d 762, 92 S.Ct. 756]; *Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056]; *Curry* v. *Superior Court*, 2 Cal.3d 707 [87 Cal.Rptr. 361, 470 P.2d 345]; *People* v. *Colombo*, 31 N.Y.2d 947 [341 N.Y.S.2d 97, 293 N.E.2d 247]; *People* v. *Failla*, 74 N.Y.Misc.2d 979 [347 N.Y.S.2d 502]; *People* v. *Matra*, 42 App.Div.2d 865 [346 N.Y.S.2d 872]; *Capio* v. *Justices of the Supreme Court*, 41 App. Div.2d 235 [342 N.Y.S.2d 100] affd. 34 N.Y.2d 603 [354 N.Y.S.2d 953, 310 N.E.2d 547].)[1]

---

[1]We adhere to this conclusion despite *In re Morris*, 194 Cal. .63 [227 P. 914]; *In re McKinney*, 70 Cal.2d 8 [73 Cal.Rptr. 580, 447 P.2d 972] and *People* v. *Barry*, 153 Cal.App.2d 193 [314 P.2d 531], which generally held that the double jeopardy clause of the California Constitution (art. I, § 15) does not bar a misdemeanor contempt prosecution against a person previously found to be in contempt for the same act or omission.

The judgment is reversed and the trial court is directed to dismiss the complaint.

Thompson, J., and Hanson, J., concurred.