In re Murray STEWART, Appellant.

No. 77–1458.

United States Court of Appeals, Fifth Circuit.

April 24, 1978.

---

Pat H. Scanlon, E. Stephen Williams, Jackson, Miss., for appellant.

E. Donald Strange, Asst. U. S. Atty., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.

Mervyn Hamberg, Dept. of Justice, Crim. Div., Washington, D. C., for amicus curiae.

Before WISDOM, GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge.

The appellant Murray Stewart was adjudged guilty of civil contempt by the district court and sentenced to a fine and a period of probation. The fine has been paid and the period of probation has run its course. The judgment of contempt is invalid and is reversed.

This case is shot through with error. At the invitation of this court, the Department of Justice has appeared as amicus curiae, and it acknowledges that the judgment of contempt was improper and that it must be reversed.

Stewart is county engineer for Hinds County, Mississippi. Thomas Stubblefield was a county employee working as a laborer on the bridge crew. Stubblefield was summoned to serve as a civil juror in the United States District Court for the Southern District of Mississippi, sitting at Jackson, Hinds County, and was selected to sit on a case which ended January 13. On January 13 an unidentified member of the court personnel told District Judge Harold Cox, presiding, that Stubblefield was having some difficulty with his employer because he was serving on the jury. Judge Cox talked with Stubblefield. In his testimony at Stewart's contempt hearing, on January 14, Stubblefield described his conversation with Judge Cox, and the ensuing events, in this way:

Q. Now at or before the time that you came out, or after you had made your report yesterday, was anything indicated to His Honor, Judge Cox, as to whether or not you had any information that you might not have the same position you had when you started jury service?

A. Yes, sir. He had found out that I had had some word, information about my job. I had mentioned that it was—that I didn't know whether it was true or not until I got back whether it was true or not because it was hearsay, so when I got back this morning [January 14] was the first I had heard of it, and I went to Mr. Stewart and asked him and at that time he told me I had been transferred. Up until that time I hadn't heard a word about it.

This confusing statement tells us nothing concerning what Judge Cox said to Stubblefield and particularly what Judge Cox may have told Stubblefield to tell his employer or supervisor. Judge Cox's position is clear from the comments which he directed to Stewart during the hearing:

I sent word by him [Stubblefield] to you of a message, and I understand you got it and I understand you didn't think so much of it.

\* \* \* \* \* \*

I told him to tell you when I had some word that there was some irregularity about whether or not he had been demoted—I understood that yesterday, and I told him to tell you that I didn't want anything like that to happen, that he was on the jury up here; better not happen, so I just assumed that you didn't care about what my message was, so you're just in hot water up here and I just don't intend to cool it off for you because I don't intend to see jurors up here mistreated.

\* \* \* \* \* \*

I was very much concerned by what I heard, and that was the reason I told Mr. Stubblefield . . . that if he had any trouble just to let me know and I'll see what about it, and that's the reason we're up here today.

When Stubblefield reported for work on January 14, he was told by the overseer of the solid waste crew that he (Stubblefield) had been transferred to the solid waste crew. Stubblefield went at once to see Stewart and objected, as Stubblefield phrased it, to being put on jury duty and

coming back and finding his job gone. In the contempt hearing Stubblefield was asked if he had told Stewart what Judge Cox had told him to say, and he answered affirmatively, but at no time did Stubblefield testify to the content of either the message given to him or his restatement of it to Stewart. In answer to more specific questions Stubblefield testified as follows. He asked Stewart if being on the jury had any bearing on the transfer, and Stewart said it did not. Stubblefield inquired whether the transfer had any relation to a rumor that he had been loafing and hauling firewood while off work for jury duty, and Stewart stated it did not. Stewart told Stubblefield that the pay for the two jobs was the same. Finally Stewart told Stubblefield that he could accept the transfer or be dismissed. Stubblefield told Stewart he would call Judge Cox and get the matter straightened out. To this Stewart responded that Judge Cox had nothing to do with him or with running the county.

Stewart testified that Stubblefield originally had worked on the county's asphalt crew. His foreman requested that he be fired or transferred because he was "doing the asphalt crew no good," and Stubblefield himself asked to be transferred. Stewart transferred him to the bridge crew although there was no vacancy on it, and he was a laborer there for three or four months. The bridge crew foreman reported that Stubblefield was "not working out too good." A vacancy for a truck driver occurred on the solid waste crew when a driver was relieved because he had two accidents. Stewart moved an assistant driver up to driver, and because the bridge crew was overstaffed and Stubblefield had the least experience of anyone in the crew, he transferred him to fill the assistant driver vacancy. Stewart notified the foreman of the waste crew of this transfer while Stubblefield was on jury duty but three or four days before January 14. Stewart testified that Stubblefield's jury service had nothing to do with the transfer and that "I have men that are on jury all the time."

Stewart's testimony did not bring out what, if anything, Stubblefield relayed to him from Judge Cox. He stated that he and Stubblefield got their backs up, that Stubblefield threatened to report him to Judge Cox, and he (Stewart) said Judge Cox had nothing to do with the matter and Stubblefield would just have to report him.

Stubblefield left the job site and went home. Later during the morning of January 14 he reported the incident to Judge Cox who either prepared (or had prepared), and signed, a show cause order which recited that Stewart had demoted Stubblefield because of Stubblefield's having served as a juror. The order directed:

that the United States Marshal or his deputy is hereby directed to serve a copy of this order on the said Murray Stewart and to take him into custody and bring him forthwith before this Court for contempt and for Murray Stewart to show cause why he should not be held in contempt of this Court.

The order and subsequent proceedings were captioned and docketed as a separate case and not as part of the civil case on which Stubblefield had sat the preceding day.

Stewart was arrested during the morning and held in custody until his trial.[1] Judge Cox directed the U.S. Attorney to serve as prosecutor. A hearing was conducted during the afternoon of the 14th. Stewart had no counsel. The record does not show that he was advised that he had a right to counsel nor does it reveal a waiver of right to counsel. Stewart subpoenaed no witnesses, and nothing in the record shows that he was told he could do so. Stubblefield testified and Stewart cross-examined him. Stewart gave his testimony, and both the U.S. Attorney and Judge Cox cross-examined Stewart.

At the conclusion of the brief testimony Judge Cox announced that he found Stewart guilty of contempt. He gave oral find-

1. The testimony does not reveal how the arrest was made, and it is not material to our decision.

ings and reasons. Among those relevant to our consideration were the following:

\*     \*     \*     \*     \*     \*

I think he [Stewart] still is in contempt of this court for mistreatment of the juror who is doing his duty up here as a sovereign citizen in the Southern District of Mississippi, and I said Mr. Stubblefield—I don't even know Mr. Stubblefield. He's not the man that started this because I got the rumor about it. I didn't get it from Mr. Stubblefield. I'm the one that started this thing and I'm the one that's going to finish it.

\*     \*     \*     \*     \*     \*

. . . But I think that Mr. Stubblefield was demoted up here. I think he was demoted because he was serving on the jury, doing what he was supposed to do, doing what he had to do.

\*     \*     \*     \*     \*     \*

. . . I think he's in flagrant violation of the laws of the United States and of this court in demoting this juror and punishing him for doing his duty up here. I haven't had this to contend with too much, but I think I might as well just make an example out of this fellow so I won't have to bother with this matter again.

The judge orally imposed a sentence of $100 fine and costs and put Stewart on probation for six months conditioned upon his paying the fine and costs, upon his restoring Stubblefield to his former position, and upon Stewart's not violating any law of the state, county or municipality and "any rules or regulations of this court like this particular regulation." The judge ordered Stewart committed until the fine and costs were paid. A formal order was entered the same day adjudging Stewart to be in civil contempt and setting out the sentence, except that the condition on probation of Stewart's obeying the law and the rules and regulations of the court was omitted. A few days later Judge Cox amended the

sentence by changing the probation to three months unsupervised probation but leaving the other terms in effect.

We understand a district judge's concern if he has evidence that a juror has been treated adversely by his employer because he has served on the jury. But judicial concern cannot explain the injustice that permeates this case. The proceedings did not meet rudimentary standards of due process guaranteed by our Constitution. They did not comply with the Federal Rules of Criminal Procedure. The court erroneously handled the case as a civil contempt case when in fact it was a criminal contempt proceeding. There was no proof that Stewart transferred Stubblefield because Stubblefield had been on the jury. Even if there had been such proof, Stewart's action would not have been contempt of court.

▮ The beginning point is to determine whether the nature of the contempt proceeding was civil or criminal. *See Lewis v. S. S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976). The district judge's order recited that Stewart was found in civil contempt of the court, but the judge's characterization is not conclusive.[2] *Southern Railway v. Lanham*, 403 F.2d 119, 124 (5th Cir. 1968). The nature of the proceeding may be determined from the purpose of the penalty. Civil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate an injured party. Criminal contempt is punitive; the penalty serves to vindicate the authority of the court and does not terminate upon compliance with a court order. *U. S. v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976); *Lewis v. S. S. Baune*, 534 F.2d 1115, 1119 (5th Cir. 1976). Further, civil contempt is a facet of a principal suit, while criminal contempt is a separate action brought in the name of the United States. *Skinner v. White*, 505 F.2d 685, 689 (5th Cir. 1974). In this case the district judge imposed a penalty that was

---

**2.** A reviewing court's inability to determine whether a proceeding is civil or criminal is in itself a ground for reversal. *In re Monroe*, 532 F.2d 424, (5th Cir. 1976); *Skinner v. White*, 505 F.2d 685 (5th Cir. 1974).

964

unconditional[3] and not subject to being lifted if Stewart purged himself. The penalty was meant to punish defiance of the court and deter similar actions.[4] The district judge's statements, particularly "I haven't had this to contend with too much, but I think I might as well just make an example out of this fellow so I won't have to bother with this matter again," make crystal clear the intent to impose punishment. Finally, while the proceeding was tangentially related to the civil suit on which Stubblefield had sat as juror and nominally did not involve the United States, it was docketed, captioned and treated as a separate case and on order of the court was prosecuted by the U.S. Attorney. The contempt proceeding against Stewart was criminal in nature.

■ The contempt proceeding did not comply with basic and elementary constitutional requirements of due process. The Supreme Court spelled out the procedural due process protections required in contempt proceedings in *Re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695 (1948), *following Cooke v. U. S.*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767, 774 (1925).

Except for a narrowly limited category of contempts, due process of law . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

This proceeding does not fall within the narrow exception where summary disposition is constitutionally permissible.

The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority before the public'. If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, . . . that the accused be accorded notice and a fair hearing as above set out.

*Re Oliver*, 333 U.S. at 275, 68 S.Ct. at 509, 92 L.Ed. at 695.

Stewart was tried without counsel and without being informed by the court that he had a right to counsel. He was not given a meaningful opportunity to call witnesses or advised of his right to do so. The first mention of witnesses came after the U.S. Attorney has presented his case, and Stewart had given his version and had been cross-examined by the U.S. Attorney and the judge. This then occurred:

MR. HAUBERG [U.S. Attorney]:
I believe that's all, Your Honor.
THE COURT:
Anything further? Got any witnesses?
MR. STEWART:
No, sir.

Because of the other deficiencies it is not necessary for us to explore whether the arrest order was so vague and uncertain that it failed to meet the constitutional due process requirement that one charged with an offense be given fair notice of the charges against him. If the arrest order was constitutionally sufficient it was only barely so.

■ The proceeding also failed to comply with Federal Rule of Criminal Procedure

---

**3.** The probation had conditions attached, but this is another matter.

**4.** Part of the penalty, the reinstatement of Stubblefield was remedial. In *Nye v. U. S.*, 313 U.S. 33, 42–43, 61 S.Ct. 810, 813, 85 L.Ed. 1172, 1177 (1941), the Supreme Court said that a contempt proceeding is considered civil only when the punishment is wholly remedial. When the punishment is partly remedial and partly punitive, "the criminal feature of the order is dominant and fixes its character for purposes of review." *Id., quoting Union Tool Co. v. Wilson*, 259 U.S. 107, 110, 42 S.Ct. 427, 428, 66 L.Ed. 848, 850 (1922).

42(b), governing criminal contempts. This rule requires that, except for conduct committed in the presence of and seen or heard by the judge, a criminal contempt shall be prosecuted on notice given to the alleged contemnor. The notice "shall state the time and place of hearing, allow a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." Here the judge issued a show cause and arrest order, which under 42(b) may be the means of notice. It did not allow a reasonable time for preparation of a defense. It did not even state the time and place of hearing.

Rule 42(b) permits the required notice to be given "orally by the judge in open court in the presence of the defendant." No such oral notice was given. When the hearing commenced the U.S. Attorney made an amorphous oral statement which, passing over its insufficiency in content, obviously did not meet the Rule's aim of notice sufficiently far ahead of trial to give opportunity to prepare a defense.

What happened in this case demonstrates the consequences of failure to comply with Rule 42(b). Stewart did not have a reasonable time to prepare a defense. The order was signed during the morning, he was arrested and confined, and during the afternoon he was put to hearing without counsel.[5] Rule 42(b) also provides that the defendant "is entitled to bail." From arrest to hearing Stewart was confined with no admission to bail.

▮▮▮ Turning to the merits of the case, Stewart's contempt conviction was clearly erroneous. As in any other criminal case, proof of guilt beyond reasonable doubt is required. *In re Joyce*, 506 F.2d 373 (CA5, 1975); *U. S. v. Barnette*, 546 F.2d 187 (CA5, 1977). The evidence did not even come close to sustaining the district judge's fac-

tual conclusion that Stewart demoted or mistreated Stubblefield because he was serving on the jury. The only evidence even arguably tending to show any causal relationship between Stubblefield's jury service and the change in his job assignment are two statements in Stubblefield's testimony: there was "some gossip around the barn that I was hauling some firewood and loafing and I feel that had a good deal of bearing on the decision that was made," and jury service "was the only reason I could think of" for the transfer. There is nothing more. In oral argument we asked the U.S. Attorney to point out more, and he could not. Next, there was no evidence that a transfer from laborer on the bridge crew to assistant truck driver on the solid waste crew was a "demotion." On examination by the U.S. Attorney, Stubblefield himself was not willing to say that it was. Thus, no evidence supports the conclusion that Stubblefield was "mistreated" or "demoted" by Stewart, and no substantial evidence supports any inference that his change in job assignment was related at all to his jury service.

▮▮▮ Finally, even if the foregoing gaps in the evidence had been filled, Stewart would not have been guilty of contempt under 18 U.S.C. § 401. That section provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

---

**5.** "The requirement . . . that the notice shall describe the criminal contempt as such is intended to obviate the frequent confusion between criminal and civil contempt proceedings . . . ." Notes of Advisory Committee on Rules, Fed.R.Crim.P. 42(b). Had the draftsman of the notice here analyzed the contempt charged in order to see if he should describe it as criminal contempt as required by 42(b), he would have come face to face with the reality that what was charged was not contempt of any kind. See discussion of 18 U.S.C. § 401, below.

Subsection (1) does not apply. Stewart's acts were outside the presence of the court, and they were not "so near thereto as to obstruct the administration of justice." The words "so near thereto" are meant as geographic terms that limit the subsection's application to acts within the immediate vicinity of the courtroom, such as the adjoining hallway or the jury room. *Nye v. U. S.*, 313 U.S. 33, 48–49, 61 S.Ct. 810, 815–816, 85 L.Ed. 1172, 1180 (1941).

Subsection (2) is obviously inapplicable. Stewart is not an officer of the court.

Subsection (3) was not violated. Stewart disobeyed no writ, process, or decree of the district court. Even if the proof had established the content of Judge Cox's message to Stubblefield and had established that Stubblefield accurately relayed it, an oral "message" such as this, not stated in open court where it could be taken down by a court reporter, addressed to a person not before the court, never entered upon the records of the court, and relayed by word of mouth through a person without official status, is not an "order" or "command" within the meaning of subsection (3). *In re LaMarre*, 494 F.2d 753 (CA6, 1974).[6]

As an afterthought, the U.S. Attorney argues that Stewart disobeyed the court's order requiring Stubblefield to perform jury service, but that argument is disingenuous. The jury service order was directed to Stubblefield, and it required Stewart neither to perform nor refrain from performing any act.[7]

■ The U.S. Attorney has urged that the appeal is moot because Stewart has paid the $100 fine and his three-month probationary period has expired. In *St. Pierre v. U. S.*, 319 U.S. 41, 42–43, 63 S.Ct. 910, 911, 87 L.Ed. 1199, 1201 (1943), the Supreme Court held that the completion of a contempt sentence rendered the case moot because "reversal of the judgment below cannot operate to undo what has been done or restore to petitioner the penalty of the term of imprisonment which he has served." Relying on the rule announced in *St. Pierre*, we have held that the payment of a fine renders a contempt case moot. *Murrell v. U. S.*, 253 F.2d 267 (5th Cir.), *cert. denied*, 358 U.S. 841, 79 S.Ct. 65, 3 L.Ed.2d 76 (1958); *Tessmer v. U. S.*, 328 F.2d 306, 307 (CA5, 1964); *U. S. v. Lee*, 404 F.2d 68 (5th Cir. 1968); *Taylor v. U. S.*, 410 F.2d 392 (5th Cir. 1969). The Supreme Court has since expressly abandoned the rule announced in *St. Pierre, see Pennsylvania v. Mimms*, —— U.S. —— n.3, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), and, recognizing the important exceptions to the *St. Pierre* rule, we have allowed review of fully served contempt sentences in *U. S. v. Schrimsher*, 493 F.2d 842, 843–44 (5th Cir. 1974), and *U. S. v. Camil*, 497 F.2d 225, 226–28 (5th Cir. 1974). Like those cases, this case is not moot because of the presumed collateral consequences that may follow from the contempt conviction. In *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court recognized "the obvious fact of life that most criminal convictions do in fact entail adverse collateral conse-

---

**6.** We are referred to no "rule or regulation" of the court to explain the judge's oral reference, when he was stating conditions for probation, to "this particular regulation."

**7.** Although not contempt, an employer's demotion of an employee because of the employee's federal jury service may violate federal law. Jury service is a federally protected activity, and 18 U.S.C. § 245(b)(1)(D) provides:

"Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

.    .    .    .    .

Any person because he is or has been, or in order to intimidate such person or any class of persons from—

.    .    .    .

Serving, or attending upon any court in connection with possible service, as a grand or petit juror in any court of the United States;

.    .    .    .

shall be fined not more than $1,000, or imprisoned not more than one year, or both; .    .    ."

It is not necessary for us to discuss whether a district judge has power to enter an order forbidding an employer from taking action adversely affecting the job status of a juror and to punish disobedience of the order by contempt.

quences" and that "the mere possibility" of such consequences was enough to keep a case from being moot. *Id.* at 55, 88 S.Ct. at 1899, 20 L.Ed.2d at 930. The Court pointed to the possibility of the petitioner's credibility being impeached in a legal proceeding or an enhanced sentence being rendered in a future criminal conviction, then said, "There are doubtless other collateral consequences." *Id.* In Stewart's case, as in *Sibron*, it cannot be shown "that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." [8] *Id.* at 57, 88 S.Ct. at 1900, 20 L.Ed.2d at 931–32. *See also Government of Canal Zone v. Castillo*, 568 F.2d 405, 406–407 (5th Cir. 1978).

Stewart has asked for repayment of his fine and for attorney fees. The Department of Justice represents as follows:

> We have been informed by the Administrative Office of the United States Courts that the clerk of the district court is an authorized disburser of funds, including fines, that have been collected for payment into the United States Treasury and are to be returned to the payor. Appellant may retrieve the amount of his fine from that source.

We know of no authority supporting an award to Stewart of attorney fees.

We do not comment upon the role played by the United States Attorney in the District Court, where he was directed to prosecute, and did so. His role on appeal is another matter. The position of the Department of Justice was stated after the U.S. Attorney had filed his brief urging that the conviction be affirmed. But when the U.S. Attorney wrote his brief he was as capable as the Department of Justice to see that the conviction of Stewart could not possibly be sustained. Nevertheless, the U.S. Attorney argued to us in his brief, without the support of any case, that Stewart was guilty of misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice.

Without basis in the record he has represented to us that Stubblefield "gave the Court's admonition to Stewart." He has not even discussed the failure to comply with Rule 42, on the ground that the trial court held this was a civil contempt case, when quite clearly it was a criminal contempt case. He has made the argument that "the proof was sufficient for the Court to find that the appellant did clearly and convincingly demote [sic] his employee Stubblefield because he [Stubblefield] was performing jury duty." He adhered to that position at oral argument while unable to point to evidence sustaining it. He has urged that we should not review this case because it is moot, without referring to the authority of this court and the Supreme Court that is discussed in this opinion. This court, and the citizenry, deserve better than this of the powerful prosecutorial arm of our government.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. U. S.*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935). These are not mere words but a mandate and a charter. If the United States Attorney had followed *Berger's* mandate on this appeal, he would have confessed error when the appeal was noticed and promptly ended this

---

**8.** Mississippi law provides that a "conviction for any offense" may be given in evidence to impeach a witness' credibility. Miss. Code Ann. § 13–1–11 (1972).

unfortunate episode. By carrying a meritless cause to finality, he not only endeavored to sustain a wrongful conviction but caused Stewart to expend substantial sums for legal fees on this appeal.

The conviction is REVERSED and the cause REMANDED with directions that the clerk be ordered to repay Stewart the fine he paid and that the proceedings be DISMISSED.