OPINION OF THE COURT

Per Curiam.

Defendant appeals from an affirmance of his conviction, after indictment and jury trial, of criminal contempt in the *317 first degree (Penal Law, § 215.51). The contempt arose out of his refusal, in violation of a court order, to answer questions before a Grand Jury. Defendant contends that his contempt has been purged and the indictment should be dismissed. He relies on an order made by a Supreme Court Justice, more than a year after defendant’s indictment and nearly two years after the contempt, allowing defendant to purge the contempt by testifying before the Grand Jury. At trial no reference to the purge order or defendant’s subsequent testimony was permitted.
 At issue is the power of a Judge to allow a defendant who has been indicted for criminal contempt under the Penal Law to purge himself of the indictment by complying, belatedly, with a court order earlier disobeyed. Since it is concluded that the purge order could have no effect on the indictment for the crime of contempt, there should be an affirmance. The problem and its resolution are simple and elaboration would be superfluous. Not to be confused with the crime of contempt, as defined in the Penal Law, is summary contempt, either civil or criminal. When the crime of contempt, prosecuted by indictment, is involved, a court may not permit the contempt to be purged.
Indictment for the crime of contempt, as defined in the Penal Law, like any other crime entitles defendant to a plenary trial. The crime is not intended solely to vindicate the authority of the court, but to further the ends of public justice as well. Thus, the crime of contempt must be distinguished from a summary criminal contempt adjudication, or a civil contempt which may undoubtedly be purged (Judiciary Law, §§ 750, 753). As had been said, nearly a century ago: "The two proceedings are wholly independent of each other. One who disobeys the lawful order of a court not only offends against the dignity of the particular tribunal, but also against the public law. The particular court may pass over the contempt and suffer its order to be spurned, but the offense against the people remains. Their authority has been contemned, the administration of public justice assailed, and its power despised” (People ex rel. Sherwin v Mead, 92 NY 415, 420 [Finch, J.]; see, also, People v Colombo, 29 NY2d 1, 4, vacated and remanded on other grounds sub nom. Colombo v New York, 405 US 9). Thus, once a contempt goes to indictment and prosecution, forgiveness by an individual Judge or court may not be permitted to frustrate the power to punish for the *318 affront to public justice. Purging of the contempt, therefore, is not permissible, at least in the absence of statutory authority.
Unnecessary to reach, and probably incorrect, is the conclusion that under no circumstances may a "criminal” summary contempt be purged. In fact, this court has concluded, in some circumstances at least, that one summarily adjudged in criminal contempt pursuant to section 750 of the Judiciary Law " 'holds the key to his freedom’ ” (Colombo v New York, 29 NY2d 1, 4, supra; People ex rel. Valenti v McCloskey, 6 NY2d 390, 399, app dsmd 361 US 534; see, also, Typothetae of City of N. Y. v Typographical Union No. 6, 138 App Div 293). Arguably, implicit in such a conclusion is the ability to purge some criminal contempts as distinguished from crimes of contempt. As noted already, however, that issue need not be reached.
This is how the law of New York has developed. It should not be confused with a somewhat different categorization of summary criminal contempts in cases before the Supreme Court of the United States involving the application of principles of double jeopardy or jury trial (e.g., Colombo v New York, 405 US 9, 10-11, supra; Shillitani v United States, 384 US 364, 368-372; Cheff v Schnackenberg, 384 US 373, 377-380).
Accordingly, the order of the Appellate Division should be affirmed.