[No. D002900. Fourth Dist., Div. One. July 31, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
BETTY LOU BATEY, Defendant and Respondent.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Anthony Lovett, Deputy District Attorneys, for Plaintiff and Appellant.

Michael P. Farris and J. Michael Smith for Defendant and Respondent.

**OPINION**

**KREMER, P. J.**—The People appeal an order of the superior court dismissing felony child stealing charges against Betty Lou Batey on the ground a factually related contempt judgment against her in a domestic case placed her once in jeopardy. We find the contempt order to be coercive and civil rather than punitive and criminal. Accordingly, the constitutional prohibition against double jeopardy has not been violated and the order appealed from must be reversed.

## FACTUAL AND PROCEDURAL HISTORY[1]

On September 7, 1982, the San Diego County Superior Court awarded custody of then 11-year-old Brian to his father Frank with specified visitation rights to Brian's mother, Betty. In accordance with the court's order, Betty picked up Brian from his father for her first scheduled visit on September 17, 1982. She was to return Brian to Frank on September 19, 1982. She did not do so but instead removed Brian from California. Frank next saw Brian April 30, 1984, at a Denver, Colorado crisis center. On May 1, 1984, Brian was returned to California and lodged with a foster family awaiting resolution of the custody proceedings between his parents.

On June 21, 1984, Frank obtained an order to show cause for contempt in the domestic action. Count I charged Betty with 464 instances of willfully failing to return Brian to him in violation of the September 7, 1982, court order (one for each day the child was retained from Sept. 20, 1982 to May 1, 1984). Count II alleged Betty made disparaging remarks about Frank in violation of the court's order. Count III charged Betty willfully prevented Brian from participating in therapy in violation of the court's order and count IV alleged Betty willfully removed Brian from California in violation of a court order.

On July 6, 1984, an information was filed charging Betty with two counts of child stealing in violation of Penal Code section 278.5, subdivision (a). Count one alleged "[o]n or about September 20, 1982, BETTY LOU BATEY did wilfully, unlawfully and in violation of a custody decree, retain a child after the expiration of a visitation period, with the intent to deprive the legal custodian of such child of the right to custody, in violation of Penal Code section 278.5(a)." Count two charged "[b]etween September 20, 1982, and April 23, 1984, BETTY LOU BATEY did wilfully, unlawfully, and in violation of a custody decree conceal a child from his legal custodian with the intent to deprive the other person of such right to custody, in violation of Penal Code section 278.5(a)."

On October 17, 1984, the family court consolidated the 464 "daily" contempt allegations into one count. Betty was found guilty of the consolidated charge and of counts III and IV. Count II was dismissed. The court imposed 5 days consecutive custody for each charge found true with credit for 16 days custody spent in Colorado. The court's minutes further state "The Court also fines the respondent $1,000 on each of the 3 counts making

---

[1]We draw the facts from the record of this criminal case, including the transcript of preliminary hearing, and from the San Diego County Superior Court file in In re Marriage of Batey, D162395, which we judicially notice.

a total of $3,000. *Execution of the fine is stayed for a period of one year on the condition that the respondent comply with all court orders regarding visitation, custody, education of minor, therapy and disparaging remarks order."* (Italics added.)

Betty entered pleas of not guilty, former conviction, and once in jeopardy to the felony child stealing allegations. On Betty's motion, the court found the contempt conviction for the consolidated count constituted former jeopardy and dismissed the information against her. The People appeal. We reverse.

## DISCUSSION

"The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" (*Brown* v. *Ohio* (1977) 432 U.S. 161, 164 [53 L.Ed.2d 187, 193, 97 S.Ct. 2221].)

█ Being in jeopardy in the constitutional sense means risking the punitive consequences normally incident to proceedings which are essentially criminal. (*Breed* v. *Jones* (1975) 421 U.S. 519, 528 [44 L.Ed.2d 346, 354-355, 95 S.Ct. 1779].) █ Being twice in jeopardy for the "same offense"[2] requires that the elements of the compared offenses be the same and that the same evidence support proof of both. (*People* v. *Lombardo* (1975) 50 Cal.App.3d 849, 854 [123 Cal.Rptr. 755]; *Benton* v. *Maryland* (1969) 395 U.S. 784, 794 [23 L.Ed.2d 707, 715-716, 89 S.Ct. 2056].)

█ The People do not question the presence of the latter two criteria but argue only that the contempt proceedings attending the domestic case here were civil rather than criminal.[3] We agree.

State and federal case law clearly distinguish criminal and civil contempts. "[W]here the object of the proceedings is to vindicate the dignity or authority of the court, they are regarded as criminal in character even though they arise from, or are ancillary to, a civil action. [Citation.]" (*Morelli* v. *Superior Court* (1969) 1 Cal.3d 328, 333 [82 Cal.Rptr. 375, 461 P.2d 655].) ". . .

---

[2]"The same" does not mean identical. The constitutional question is "whether each provision requires proof of an additional fact which the other does not. . . ." (*Blockburger* v. *United States* (1932) 284 U.S. 299, 304 [76 L.Ed. 306, 309, 52 S.Ct. 180].) The fact that one offense may require proof of an additional element the other does not will not destroy constitutional identity. (*Brown* v. *Ohio, supra,* 432 U.S. at p. 168 [53 L.Ed.2d at pp. 195-196].)

[3]In light of the People's argument and our disposition, we do not reach the question whether the two offenses are the same.

[C]ivil contempt, as contrasted with criminal contempt, has traditionally been viewed as non-punitive, for its purpose is only to compel compliance with a lawful order of the court; . . ." (*In re Lifschutz* (1970) 2 Cal.3d 415, 439, fn. 27 [85 Cal.Rptr. 829, 467 P.2d 557].) Federal law is to the same effect. "Under the sanction test if the purpose of the relief is to compel the respondent to comply or compensate the petitioner for the refusal, the contempt proceeding is civil in nature. If the purpose is to punish the respondent and vindicate the court, the proceeding is criminal." (*United States* v. *Asay* (9th Cir. 1980) 614 F.2d 655, 659.)

Respondent argues the contempt proceedings in the family court matter here were clearly aimed at vindicating the court and punishing past conduct rather than compelling compliance in the future or compensating a private litigant. Respondent points out Betty was sentenced to a flat fifteen days in custody, the maximum possible for three counts of contempt (Code Civ. Proc., § 1218), with no option given her to avoid the sanction through future conduct. Respondent concludes that under controlling law, these contempt proceedings were criminal.

However, respondent's reading focuses on only a portion of the court's disposition. Viewed as a whole, the court imposed no present custody at all and stayed payment of any fine for one year conditioned upon respondent's complying with various family court orders. It is this entire disposition which we consider to determine whether the proceedings were essentially civil or criminal.

*Colombo* v. *New York* (1972) 405 U.S. 9 [30 L.Ed.2d 762, 92 S.Ct. 756] and the cases it relies upon aid to resolve the question.

Colombo refused to testify before a New York Grand Jury, was found in contempt, sentenced to 30 days and fined $250. His subsequent offer to testify was refused and he served his sentence and paid the fine. He was then indicted for "'his contumacious and unlawful refusal after being sworn as a witness to answer any legal and proper interrogatories.'" (*Colombo* v. *New York, supra,* at p. 10 [30 L.Ed.2d at p. 763].) The trial court dismissed the indictment on double jeopardy grounds. An intermediate court of appeal reversed and the New York Court of Appeal affirmed the reversal on two grounds: there were, on these facts, two separate acts of contempt and Colombo's commitment was for civil rather than criminal contempt.

The Supreme Court vacated the judgment of the New York Court of Appeal stating "The judgment of the New York trial court entered on December 15, 1965, was for 'criminal contempt,' petitioner was sentenced to a definite term in jail and ordered to pay a fine, and neither the prosecutor

nor the trial court considered his offer to testify as sufficient to foreclose execution of the sentence. For purposes of the Double Jeopardy Clause, petitioner was confined and penalized for criminal contempt. *Yates* v. *United States,* 355 U.S. 66 (1957); see also *Cheff* v. *Schnackenberg,* 384 U.S. 373 (1966); *Shillitani* v. *United States,* 384 U.S. 364 (1966); *Oriel* v. *Russell,* 278 U.S. 358 (1929)." (*Colombo* v. *New York, supra,* at pp. 10-11 [30 L.Ed.2d at pp. 763-764].)

In *Yates,* the issue was whether the petitioner could be sentenced to prison *after* termination of the trial based on a contempt finding arising from her refusal to answer questions during the trial. The petitioner argued the prison sentences were imposed to coerce her into answering the questions instead of to punish her, were thus civil rather than criminal contempt, and she could not therefore be properly imprisoned after the trial. (*Yates* v. *United States* (1957) 355 U.S. 66, 71 [2 L.Ed.2d 95, 100, 78 S.Ct. 128].) When the district court imposed the sentences, it stated if she answered the questions within 60 days, while it had authority to modify the sentence under rule 35 of the Federal Rules of Criminal Procedure (18 U.S.C.), it would be inclined to accept her submission to the authority of the court. (The petitioner persisted in her refusal.) (*Id.,* at p. 70 [2 L.Ed.2d at p. 100].)

The United States Supreme Court held the contempts were criminal, stating: "We do not believe that the sentences under review in this case were imposed for the purpose of coercing answers to the 11 questions. *Rather, the record clearly shows that the order was made to 'vindicate the authority of the court' by punishing petitioner's 'defiance' thereof.* The sentencing judge did express the hope that petitioner would still 'purge herself to the extent that she bows to the authority of the court' by answering the questions either at the time of the sentencing or within 60 days thereafter. In doing so, however, he acted pursuant to the power of the court under Rule 35 of the Federal Rules of Criminal Procedure rather than under any theory of civil contempt. Indeed, in express negation of the latter idea, he stated that should she answer the questions, '[i]t could have no effect upon this proceeding and need not be accepted as a purge, because of the fact that the time has passed . . . for the administration of justice in this case to be affected by it.'" (*Yates* v. *United States, supra,* 355 U.S. at p. 72, fn. omitted [21 L.Ed.2d at p. 101], italics added.)

In *Cheff,* the petitioner, Cheff, argued his contempt, arising from a Federal Trade Commission proceeding, was civil rather than criminal, and he was wrongfully denied a jury trial at the contempt hearing. (*Cheff* v. *Schnackenberg* (1966) 384 U.S. 373, 376-377 [16 L.Ed.2d 629, 631-632, 86 S.Ct. 1523].) The United States Supreme Court (although noting the issue was irrelevant since a jury trial is not required in civil contempt proceedings)

held the contempt was criminal since the purpose of the proceedings was not remedial. *Cheff,* a former officer of the corporation which had violated the court's order (ordering compliance with an FTC order), had severed all connections with the corporation long before the contempt proceedings were initiated against him, and the corporation had withdrawn from the area of business involved in the FTC violation. Thus, there was an "*'absence of any necessity of assuring future compliance'* which made the six-month sentence 'entirely punitive.'" (*Id.,* at p. 377 [16 L.Ed.2d at p. 632], italics added.)

In contrast, in the companion case to *Cheff, Shillitani* v. *United States* (1966) 384 U.S. 364 [16 L.Ed.2d 622, 86 S.Ct. 1531], the United States Supreme Court found a contempt arising from refusals to answer questions before a grand jury to be civil (and thus not requiring indictment and a jury trial). *Shillitani* had been given a conditional sentence; i.e., his two-year sentence would be terminated before its expiration should he answer the questions or should the grand jury be discharged, whichever may occur first. (*Id.,* at pp. 365, 366 [16 L.Ed.2d at pp. 624, 625].) The United States Supreme Court relied on the following factors in finding the contempt civil (1) the act of disobedience consisted of refusing to do what had been ordered, not in doing what had been prohibited; (2) the conditional imprisonment was for the obvious purpose of compelling the witness to testify, thus essentially a civil remedy designed for the benefit of other parties; (3) the fact the courts below called it "criminal contempt" is not determinative, since it "'. . . is not the fact of punishment but rather its character and purpose that often serve to distinguish' civil from criminal contempt. [Citation.] . . ." (*id.,* at p. 369 [16 L.Ed.2d at p. 627]); (4) the sentences were intended to operate in a prospective manner, to coerce rather than punish, and concluding "[w]hile any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to testify. [Citation.] The test may be stated as: what does the court primarily seek to accomplish by imposing sentence? Here the purpose was to obtain answers to the questions for the grand jury." (*Id.,* at p. 370, fn. omitted [16 L.Ed.2d at p. 627].)

Finally, in *Oriel* v. *Russell* (1929) 278 U.S. 358, 363-364 [73 L.Ed. 419, at page 424, 49 S.Ct. 173], the United States Supreme Court, relying on *Gompers* v. *Buck's Stove & R. Co.* (1911) 221 U.S. 418, 442 [55 L.Ed. 797, 806, 31 S.Ct. 492], concludes proof beyond a reasonable doubt is not necessary in a contempt order committing the petitioners to jail until they turned over books ordered in a bankruptcy proceeding, since it was a civil contempt, stating: "While in a sense they are punitive, they are not mere punishment—they are administrative but coercive, and intended to compel,

against the reluctance of the bankrupt, performance by him of his lawful duty." (*Oriel* v. *Russell, supra,* at p. 363 [73 L.Ed. at p. 424].)

The following guidelines emerge from the United States Supreme Court cases. A criminal-punitive contempt order is one which imposes punishment even though the offender offers to purge himself of the contempt, or even though future compliance with the order is no longer necessary. In contrast, a civil-coercive contempt order is one which, although it may have punitive aspects, has as its main purpose the coercion of compliance with the court's order.

Several additional factors evaluated in other cases in various contempts provide useful guidelines here, including the following:

(1) Whether the contempt proceeding is docketed as criminal and tried by the state, rather than docketed as civil and pursued by a private party (*Gompers* v. *Buck's Stove & R. Co., supra,* 221 U.S. 418; *In re Stewart* (5th Cir. 1978) 571 F.2d 958, 963-964; *Latrobe Steel Co.* v. *United Steelworkers, Etc.* (3d Cir. 1976) 545 F.2d 1336, 1345, compare *State* v. *Thompson* (1983) 294 Ore. 528 [659 P.2d 383, 387]).

(2) Whether the contempt orders punishment which is absolute (i.e., regardless of compliance) or conditional (i.e., suspended if the contemnor complies with the order). (*In re Stewart, supra,* 571 F.2d at p. 964: an unconditional fine; *Latrobe Steel Co.* v. *United Steelworkers, Etc., supra,* 545 F.2d at p. 1343.)

(3) Whether the main purpose of the court order is to benefit the plaintiff by providing disincentives to the contemner to continue defiance of the court's order. (*Latrobe Steel Co.* v. *United Steelworkers, Etc., supra,* at p. 1344.)

(4) Whether the circumstances indicate the private party plaintiff was seeking remedial relief to compel future compliance. (*Shakman* v. *Democratic Organization of Cook Cty.* (7th Cir. 1976) 533 F.2d 344, 350, cert. den. 429 U.S. 858 [50 L.Ed.2d 135, 97 S.Ct. 156].)

Here, Mr. Batey initiated contempt proceedings under Code of Civil Procedure section 1209 et seq. in the family law action for failure to return the child as required by the custody visitation order. The Code of Civil Procedure contempt proceedings resulted in a finding of three counts of contempt, three $1,000 fines which were suspended upon condition Mrs. Batey comply with family court orders for one year, and a 15-day jail

sentence for which credit was given for 16 days served in Denver, Colorado following her arrest.

Applying the above principles to these facts, the contempt order is predominately civil. The proceedings were initiated by a private plaintiff, were not prosecuted by the People, and were captioned as a civil proceeding. The fine imposed was conditioned upon future noncompliance and served primarily to benefit Mr. Batey by giving Mrs. Batey an incentive not to again violate the court's order. Significantly, the fines' suspension was not expressed in language usual to criminal probationary suspensions; that defendant remain generally law-abiding.

The jail sentence imposed on Mrs. Batey was credited against prior confinement. In short, the contempt order gave rise to no actual punishment, and its terms indicate a design to ensure future compliance by Mrs. Batey which will benefit Mr. Batey. Accordingly, the proceedings were essentially civil, not criminal, and should not be a double jeopardy bar to a Penal Code section 278.5, subdivision (a), proceeding.

The very recent decision *People* v. *Derner* (1986) 182 Cal.App.3d 588 [227 Cal.Rptr. 344] (petn. for review filed July 22, 1986) supports this conclusion. There defendant violated a family court custody order, was found in contempt and sentenced to five days custody and a $1,000 fine.

The trial court suspended execution of the custody and fine stating defendant was to "'[v]iolate no laws for one year. You are not to violate any other court orders in this file for a period of one year.'" (*People* v. *Derner, supra,* 182 Cal.App.3d at p. 592.) The Court of Appeal found "enough in [this] statement" to show that "at least the primary part" of the trial judge's order was coercive and concluded "the contempt proceeding against appellant was civil in nature and did not invoke the jeopardy provisions of the United States or California Constitutions" so as to bar a prosecution for violation of Penal Code section 278.5. (*Ibid.*)

If anything the facts of this case more strongly support the conclusion the proceedings were civil since the trial judge's order here was stated wholly in terms of complying with the family court's order and did not contain the mixed probationary and civil-coercive language of *Derner.*

*People* v. *Lombardo, supra,* 50 Cal.App.3d 849, relied upon by respondent, does not require a different result. Lombardo refused to answer questions put to him at another's preliminary hearing, was found in contempt and sentenced to five days custody and a $300 fine. He was later charged with a criminal violation of Penal Code section 166 for the same conduct,

found guilty and sentenced to six months in jail and a fine of $500 with credit for the custody served and fine previously paid. The Court of Appeal reversed holding Lombardo's plea of once in jeopardy should have prevailed. The court noted the object of the contempt proceedings was criminal since it vindicated the authority of the court and punished past conduct rather than coerced future compliance. Following *Colombo* v. *New York, supra,* the Court of Appeal concluded a second prosecution against Lombardo was barred by the double jeopardy clause of the Fifth Amendment.

In contrast to this case, neither the custody nor fine in *Lombardo* were suspended and both proceedings were brought by the public prosecutor. There was nothing from which a court could conclude the contempt proceedings were other than criminal and punitive.

## Disposition

We find the contempt proceedings were civil rather than criminal in nature and pose no double jeopardy bar to prosecution for Penal Code violations arising from the same conduct.

The order of the trial court dismissing the information against respondent is reversed.

Work, J., concurred.

**LEWIS, J.**—I respectfully dissent. Whether viewed as a whole or otherwise, the disposition of the contempt proceedings included an order that Betty Lou Batey serve 15 days in custody for her failure to comply with prior orders of the court. That custody was not conditional. She could not avoid it by complying with or agreeing to comply with an order of the court. She had been "found guilty" and had served the 15 days. The fact she served it while awaiting her hearing does not change the fact she served the time. It was actual punishment under the order. Characterizing as "civil" a sentence of 15 days in custody for past conduct with no possibility of obtaining a release by complying with the orders of the court, in my opinion, contravenes the definition of what is a contempt that is criminal in character. The dignity or authority of the court was being vindicated by that commitment to custody. (See *Morelli* v. *Superior Court* (1969) 1 Cal.3d 328, 333 [82 Cal.Rptr. 375, 461 P.2d 655].) The fact Batey also received fines which she could avoid by future compliance with the orders does not change the fact she had to serve her 15 days. Batey's service of time, the most onerous aspect of the contempt order, brings her case into the ambit of *People* v. *Lombardo* (1975) 50 Cal.App.3d 849 [123 Cal.Rptr. 755], which would bar the later prosecution because the contempt order was punitive.

For purposes of double jeopardy, it is of minimal relative significance that Batey was left with the ability to avoid payment of the fines by means of future compliance with court orders, whereas Lombardo did not because he had already paid the fine. As I read *Lombardo,* the fact the fine was paid, as an additive to the jail time, played no particularly important role in the court's analysis. The fact the trial court's contempt order "was punitive in nature" (50 Cal.App.3d at p. 854) furnished the foundation for the decision.

In my opinion it is inconsequential that the portion of the contempt order constituting the fine could be viewed as suspended or as coercive only, since I believe that when it is considered along with the jail order actually served, it also fulfilled a primary purpose which is both punitive and deterrent. (See *Yates* v. *United States* (1957) 355 U.S. 66, 74 [2 L.Ed.2d 95, 102, 78 S.Ct. 128], "The civil and criminal sentences served distinct purposes, the one coercive, the other punitive and deterrent.")

The trial judge correctly analyzed the sentence to custody as punitive and correctly applied the law of double jeopardy. The order of the trial court should be affirmed.

A petition for a rehearing was denied August 27, 1986. Lewis, J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied November 20, 1986. Bird, C. J., was of the opinion that the petition should be granted.