[No. D009084. Fourth Dist., Div. One. Mar. 5, 1990.]

In re CARINA C., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
AMANDA C., Objector and Appellant.

## COUNSEL

Nancy A. Dorner, under appointment by the Court of Appeal, for Objector and Appellant.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Robert C. Phillips, Deputy District Attorneys, for Petitioner and Respondent.

Robert Wayne Gehring, under appointment by the Court of Appeal, for Minor.

## OPINION

**HUFFMAN, J.**—Amanda C., the mother of the minor child in this action, appeals an order issued after a permanency planning hearing held in the juvenile court pursuant to Welfare and Institutions Code section 366.25.[1] She seeks to avoid the restrictions of section 366.25(j), barring appeals from permanency planning orders, by claiming her appeal addresses the jurisdiction of the juvenile court. Her principal contention is that the referee was without authority to act as a temporary judge without a valid stipulation. She further claims a lack of adequate notice of her rights to a rehearing of the matter before a superior court judge.

Although we find this appeal to have been improvidently taken from a nonappealable order, we will treat it as a petition for writ of mandate and consider the arguments in that light. We deny the petition because the referee acted within his authority pursuant to sections 248 and 249; no stipulation was required. Moreover, the record shows no defect in the order because Amanda received adequate notice of her rights to a rehearing as required by section 252.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 1987, a petition was filed pursuant to section 300(a) on behalf of Carina C., then age one and one-half years, alleging she had no parent or guardian actually exercising or willing to exercise and capable of exercising parental care and control. It was specifically alleged that on or about and between September 23, 1986, and February 8, 1987, Amanda excessively used amphetamines to the detriment of Carina.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

On February 24, 1987, Carina was declared a dependent child of the juvenile court and placed with a maternal aunt.

On May 6, 1987, a supplemental petition was filed pursuant to section 387 alleging that previous orders of the juvenile court had not been effective in protecting the minor and therefore further orders of the juvenile court would be necessary. Specifically, the petition alleged that the maternal aunt with whom the minor had been placed on February 24, 1987, was no longer willing to continue to provide care and supervision for the minor and requested the services of the juvenile court. As a result, a hearing was held and the minor was placed with the maternal grandparents.

A review hearing was held on December 15, 1987, and Carina was continued as a dependent child of the juvenile court. The mother and father were both ordered to comply with a reunification plan.[2] A permanency planning hearing was scheduled for June 13, 1988.

At the June 1988 hearing, certain problems then being experienced by the mother, Amanda, were reported to the court by the social worker. Carina was continued as a dependent child of the juvenile court and Amanda was ordered to comply with the reunification plan and to participate in drug testing. The permanency planning hearing was continued until August 4, 1988, when the report of the social worker was received in evidence. The report recommended Carina be freed from Amanda's custody and control and suggested the maternal grandparents be considered for legal guardianship. A trial date for a contested permanency planning hearing was scheduled for September 22, 1988.

The permanency planning hearing was held without objection by any party before a juvenile court referee on September 22 and October 3, 1988. Attorneys for both parents (including the mother's guardian ad litem),[3] the maternal grandparents, and the minor were present, as well as the department of social services' attorney. As a result of the hearing, the referee concluded the return of the minor to the care and custody of Amanda would create a substantial risk of detriment to her physical and emotional well being. The referee concluded there was no substantial probability the minor would be returned within six months, and that while Carina was not

---

[2] Carina's father's whereabouts were unknown from approximately September 1987 to August 1988. He was located at a correctional facility in September 1988 and his attorney attended the October 1988 permanency planning hearing which resulted in the order here appealed. However, he has not filed a notice of appeal in order to become a party at this level and, according to a September 1988 social study, has shown little interest in reunification with his daughter and has not complied with the reunification plan.

[3] A guardian ad litem had been appointed for the mother, whose whereabouts were unknown at the time of the hearing.

adoptable due to exceptional circumstances (her need to stay in her foster home with her maternal grandparents), relatives were available and eligible for legal guardianship. The department of social services was ordered to initiate or facilitate legal guardianship proceedings. The referee's order was signed by a superior court judge.

On October 17, 1988, the parties through their attorneys were given written notice of their right to rehearing under section 252 before a superior court judge.[4] Amanda did not seek a rehearing but, through her guardian ad litem, timely filed a notice of appeal of the entire permanency plan order.

DISCUSSION

I

Nonappealable Order

■ Amanda contends an appeal is authorized pursuant to section 395, which generally defines appealable orders and judgments in section 300 dependency proceedings, because she claims the referee lacked jurisdiction. She argues therefore she is not bound by the specific restrictions of section 366.25(j).[5] However, the fact Amanda claims a jurisdictional defect in the orders of the juvenile court does not remove those orders from the plain language of subdivision (j). This case falls squarely within that subdivision. (*In re Albert B.* (1989) 215 Cal.App.3d 361, 372-373 [263 Cal.Rptr. 694]; *Jones T.* v. *Superior Court* (1989) 215 Cal.App.3d 240, 254 [264 Cal.Rptr. 4].) Any right to appeal from an order under section 366.25 authorizing proceedings to terminate parental rights has been retroactively terminated. (*In re T.M.* (1988) 206 Cal.App.3d 314, 315-316 [253 Cal.Rptr. 535].) Policy reasons also support that conclusion: the order to initiate guardianship proceedings and the other permanency plan orders are interim orders

---

[4]The proof of service of this order and the form giving notice of rehearing only appear in the augmented record on appeal, prepared at the respondent department of social services' request. (Cal. Rules of Court, rule 12(a).)

All references to rules are to the California Rules of Court unless otherwise specified.

[5]Section 366.25(j) was added in 1988 and provides: "(j) An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ."

Immediately preceding subdivision (j) is subdivision (i), which was already present in the text of the section when subdivision (j) was added in 1988: "(i) This section applies to minors adjudged dependent children of the juvenile court pursuant to subdivision (c) of Section 360 prior to January 1, 1989." (See *In re Angela R.* (1989) 212 Cal.App.3d 257, 262 [260 Cal.Rptr. 612].)

for further action which do not resemble a final judgment or order after judgment made appealable by section 395.[6]

■ Although we do not find the order challenged here to be appealable, there are good reasons to reach the merits of Amanda's arguments. The underlying issue of the alleged lack of jurisdiction of the juvenile court has been fully briefed by both sides and respondent has not asked that the appeal be dismissed. In cases such as this where the conditions for the resolution of the matter as a petition for writ of mandate are present and a refusal to decide the issue raised by an improvident appeal would result in unnecessarily dilatory and circuitous litigation, the court has the power to treat the appeal as a petition for writ of mandate. (*In re Albert B., supra*, 215 Cal.App.3d 361; *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].)

Accordingly, we will treat this appeal as a petition for writ of mandate and proceed to examine the arguments on their merits to determine if any abuse of discretion occurred below which would justify appellate intervention in this matter. (See *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13].)

II

Merits of Amanda's Arguments

■ Amanda claims the decision of the referee was void for failure to obtain a written or verbal stipulation that the referee could act as a temporary judge, and that, in addition, she did not receive adequate notice of her right to seek rehearing of his decision. Relying on article VI, section 21 of the California Constitution[7] and rule 244 (formerly rule 244(a)),[8] she correctly points out a temporary judge may exercise all the powers of a judicial officer upon proper stipulation of the parties.[9] The difficulty with Amanda's arguments is that here, the referee did not act as a temporary judge, but

---

[6] We draw this conclusion notwithstanding that certain other types of orders after a permanency planning hearing may be appealable. (See *In re Corienna G.* (1989) 213 Cal.App.3d 73, 78-79 [261 Cal.Rptr. 462], where the court held section 366.25(j) does not preclude appeals from a permanency planning order for long-term foster care.)

[7] Article VI, section 21 provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause."

[8] Rule 244 requires a stipulation for trial before a temporary judge to be in writing and to be approved by the presiding judge, with an order endorsed thereon and the temporary judge's oath filed with the court.

[9] The parties in this case do not dispute they never stipulated that the referee could act as a temporary judge. In fact, the issue of his status was raised for the first time on appeal.

instead made orders within the statutorily authorized power of any juvenile court referee. Therefore, her authorities dealing with the role of temporary judges are simply inapposite.

The conduct of referees in juvenile court is governed by a comprehensive statutory scheme. Section 247 authorizes the appointment of referees to assist in the business of the juvenile court. Rule 1415 et seq. (formerly rule 1316 et seq.)[10] supply the procedure for hearings before referees held pursuant to section 247 and the California Constitution, article VI, section 21 (see fn. 7, *ante*). Referees are assigned to perform "subordinate judicial duties" and may pursuant to stipulation act as temporary judges.

The statutory scheme also provides that where a judicial officer acts as a referee, that officer's initial findings and orders are advisory in nature and their rendition constitutes no more than a subordinate judicial duty. Such decisions by the referee are subject to rehearing upon timely application of a minor or his parent (§ 252) or by the superior court on its own motion (§ 253). (*In re Mark L.* (1983) 34 Cal.3d 171, 178 [193 Cal.Rptr. 165, 666 P.2d 22]; *In re Damon C.* (1976) 16 Cal.3d 493, 496-497 [128 Cal.Rptr. 172, 546 P.2d 676].) However, the rehearing procedure is not in general mandatory (with several exceptions to be explained below) and the referee's decisions ordinarily become final absent a timely challenge by a party affected by the decision. (§ 250 et seq.)[11] No such challenge was made here.[12]

---

[10]Rules 1301 to 1396 were repealed effective July 1, 1989, and replaced with rules 1400 to 1497. For our purposes, we will discuss the current version of the rules.

[11]The procedure for rehearing of a referee's orders is set forth in section 250 through 254. Section 250 provides: "Except as provided in Section 251, all orders of a referee other than those specified in Section 249 shall become immediately effective, subject also to the right of review as hereinafter provided, and shall continue in full force and effect until vacated or modified upon rehearing by order of the judge of the juvenile court. In a case in which an order of a referee becomes effective without approval of a judge of the juvenile court, it becomes final on the expiration of the time allowed by Section 252 for application for rehearing, if application therefor is not made within such time and if the judge of the juvenile court has not within such time ordered a rehearing pursuant to Section 253. [¶] Where a referee sits as a temporary judge, his or her orders become final in the same manner as orders made by a judge."

Section 251 provides: "The judge of the juvenile court, or in counties having more than one judge of the juvenile court, the presiding judge of the juvenile court may establish requirements that any or all orders of referees shall be expressly approved by a judge of the juvenile court before becoming effective." The record does not show that any such policy is in effect in San Diego County.

Section 252 then supplies the basic procedure for an application to the juvenile court by a minor, parent, or guardian for a rehearing of an order and findings made by a referee.

[12]Rule 1416(a)(2) (formerly rule 1317(a)(2)) provides that prior to the conclusion of a hearing conducted by a referee, the minor and parent shall be informed of the referee's status and that there is a right to seek review of the referee's order before a juvenile court judge. Although the record does not show this procedure was followed here, it would have been useless because neither of three-year-old Carina's parents was personally present at the

In general, a referee is empowered by section 248[13] to exercise the same judicial authority as a judge of the juvenile court, except in hearings as to which the state or federal constitutional prohibitions against double jeopardy apply. This statutory exception does not pertain to these facts; the matter before the court did not implicate any party's constitutional double jeopardy protections. This was a dependency proceeding which is civil in nature, designed not to prosecute the parents but to protect the child. (*In re Mary S.* (1986) 186 Cal.App.3d 414, 418 [230 Cal.Rptr. 726]; Cal. Const., art. I, § 15; Pen. Code, §§ 687, 1023.)

In section 249 and rule 1417(b)(1) (formerly rule 1318),[14] the Legislature has provided another specific restriction on the authority of a referee to make juvenile court orders: in cases where a referee orders a minor removed from his or her home or from the physical custody of a person legally entitled thereto, the order does not become effective until approved by a judge of the superior court. However, neither the statutory scheme nor any court rule requires any stipulation before a referee may make such an order; instead, the safeguard provided is that such orders (removal from custody or the home) require superior court approval. Thus, even if we construe the permanency planning order as an order removing Carina from her mother's custody or home (even though that result had long been in effect at the time the order appealed here was made), the procedure used by the juvenile court after the permanency planning hearing complied fully with the statutory scheme of sections 247 through 252 and substantially with the applicable court rules.

A review of this record demonstrates that at the hearings of September 22 and October 3, 1988, the judicial officer acted in the capacity of a juvenile court referee, and his decision to initiate guardianship proceedings was approved by a judge of the superior court. Through her attorney, Amanda had notice of the referee's status, was given notice of his order, and was served with an explanation of her right to seek review of that order (although she never did so). (See fns. 11 & 12, *ante.*) Even accepting, as

---

hearing. In any case, the augmented record on appeal shows Amanda was promptly served with written notice of her right to review of the referee's orders seven times before the permanency planning hearing and twice afterwards.

[13] Section 248 provides in pertinent part: "A referee shall hear such cases as are assigned to him or her by the presiding judge of the juvenile court, *with the same powers as a judge of the juvenile court, except* that a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge." (Italics added.)

[14] Section 249 provides: "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."

Rule 1417(b)(1) requires, inter alia, judicial approval of a referee's order removing a minor from the physical custody of the person legally entitled thereto.

Amanda argues, that there was no express or implied stipulation to confer on the referee the powers of a temporary judge, his authority to make the orders he did was provided by section 247 et seq. and rule 1415 et seq., as explained above.

For all the reasons explained above, we find no jurisdictional defect or lack of notice and due process in the issuance of the permanency planning order of the juvenile court.

## DISPOSITION

The appeal is treated as a petition for writ of mandate and the petition is denied for lack of a showing of excess of jurisdiction or abuse of discretion.

Wiener, Acting P. J., and Benke, J., concurred.