[No. B046082. Second Dist., Div. Three. Apr. 10, 1991.]

In re JOHNNY M., a Person Coming Under the Juvenile Court Law.
COUNTY OF LOS ANGELES DEPARTMENT OF CHILDREN'S SERVICES, Plaintiff and Respondent, v.
SANDRA M., Defendant and Appellant.

COUNSEL

Robert A. Devine for Defendant and Appellant.

De Witt W. Clinton, County Counsel, Sterling Honea and Joe Ben Hudgens, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

CROSKEY, J.—This is an appeal from a permanency plan order of the juvenile court made pursuant to Welfare and Institutions Code section 366.25.[1] The permanency plan was to refer the dependent minor child, Johnny M. (minor), for adoption. The order was made after the court found that the reunification efforts made by respondent, the County of Los Angeles (County), on behalf of the minor and his mother Sandra M. (Mother), were reasonable but unsuccessful and that it was not substantially probable that the minor would be released to Mother's custody within the next six months.

Mother challenges the order because the court did not provide her with a contested hearing before deciding to refer the child for adoptive placement and to terminate Mother's parental rights. The County argues that Mother's appeal, besides being without merit, is also taken from a nonappealable order.

We agree that the order is not appealable but we treat it as a petition for a writ of mandamus, and thereby consider its merits. We hold that Mother was entitled to a contested hearing on the issue of a permanent placement plan for the care of the minor and that denial of such a fundamental due process right warrants issuance of a peremptory writ of mandate to direct the court to set aside its order and conduct a contested hearing.

---

[1] Unless otherwise indicated, all statutory references herein are to the Welfare and Institutions Code.

## PROCEDURAL AND FACTUAL BACKGROUND[2]

The sustained petition in this case alleged that on June 2, 1986, the minor was observed to have bruises on his body which would not ordinarily be present without unreasonable acts or omissions of the person having responsibility for him. (§ 300.) He was two months old at that time.

The record shows that on December 18, 1986, a supplemental petition (§ 387) was filed with the juvenile court. It alleged (1) that the court had previously released the minor on November 18, 1986, and (2) that the court's previous disposition (allowing the minor to remain with Mother in the home of an unrelated caretaker) was not effective. The minor was taken from that home on December 16 by the department of children's services (DCS).

On December 19, 1986, the court found a prima facie case under section 300 for detaining the minor. Mother was given monitored visits with the minor.

At a disposition hearing held June 23, 1987, the court adjudged the minor to be a dependent child of the juvenile court under section 300, subdivision (a), and found that custody should be taken from his parents because of a substantial danger to his health.[3] The court ordered (1) that the child be suitably placed, (2) that Mother continue to be given monitored visits, (3) that Mother participate in counseling, and (4) that DCS provide family reunification services. The matter was continued to December 1987 for judicial review and to June 1988 for a permanency planning hearing.

The children's services worker's report filed with the court for the December 1987 judicial review hearing showed that the minor was fearful of his mother during her visits and that Mother was having problems meeting her responsibilities under the plan for family reunification services. By this time, the minor was residing with foster parents. At the December 22, 1987 hearing, the court continued the DCS's family reunification plan and continued the matter to June 1988 for a permanency planning hearing.

The children's services worker's report filed for the June 1988 permanency planning hearing showed improvements in Mother's life and her

---

[2] California Rules of Court, rule 15(a) states in part: "The statement of any matter in the record shall be supported by appropriate reference to the record." In filing his opening brief, the attorney for Mother has totally ignored this mandate. It would be helpful to this court if, in the future, counsel adhered to this rather fundamental rule. It would also be helpful if case citations in counsel's briefs were correct with respect to case titles, reporter volumes and page numbers.

[3] The minor's father declined any interest in his son throughout the pendency of the case and is not a party to this appeal.

relationship with her son. Mother acknowledged past mistakes and indicated that she really wanted to be reunited with him. She had decided to move in with her own mother.

At the June 21, 1988, hearing, the court found it substantially probable that the minor would be returned to Mother's custody within six months (§ 366.25, subd. (c)) and the court placed the minor with his maternal grandmother and continued the family reunification services (counseling and parenting classes, monitoring and home visits). The case was continued to December 1988 for judicial review.

The children's services worker's report for the December 1988 judicial review hearing recommended, and the court approved, a modification of the prior order that had placed the minor with his maternal grandmother. By this time, Mother had begun living with the father of her second child. The report stated she was maintaining a stable residence, successfully parenting the new baby and meeting her responsibilities under the family reunification plan. The report also stated she had had three-day visits with the minor as well as a "short vacation with him." Thus, at the December 20, 1988, hearing, the placement order was modified to allow Mother a 60-day visit with the minor in her home. The case was continued to the nonappearance calendar of February 14, 1989, for a progress report on the 60-day visit and to June 1989 for a permanency planning hearing.

Without a hearing, the 60-day visit was terminated January 17, 1989, the DCS alleging the minor had been reabused. He was placed in a foster home. The February 14, 1989, progress report return date was advanced and vacated by the court and the case was continued to June 1989 for a permanency planning hearing. The minor and his Mother had no visits in the interim.

The children's services worker's report filed with the court for the scheduled June 20, 1989, permanency planning hearing reflected a major change in DCS's recommendations to the court. It recommended that permanent placement services be commenced for the minor and he be referred to the County adoptions department for possible adoption by his maternal grandmother or a legal guardianship with his then-current foster parents, in whose care he was "thriving." The report states that the change in recommendation was due to Mother's failure to comply with the treatment plan, to resolve parenting problems even after extensive services through the court, the reabuse of the minor, her failure to visit him since January 1989 and his having been a dependent child of the court since 1986. The minute order for the permanency planning hearing originally scheduled for June 20, 1989, shows it was continued to both August 9 and September 13, 1989.

The minute order for August 9, 1989, states: "Contest is OFF on 9-13-89—has been PPH—matter remains 9-13-89 for PPH and possible 388 Pet." Apparently the August 9 hearing did not directly address the merits of the DCS recommendation of adoption. Thereafter, the case trailed from September 13 to September 20, 1989.

A review of the reporter's transcript for the September 20, 1989, hearing shows that at the August 9 hearing the court held that the hearing at which adoption would be addressed would not be a contested hearing because a hearing under Civil Code section 366.25 had already been held once and therefore if Mother wished to contest what would next happen in the case, she would have to file a section 388 petition to change, modify or set aside the prior order.[4] The court cited *In re Heather P.* (1989) 209 Cal.App.3d 886 [257 Cal.Rptr. 545] as a basis for its ruling.

Mother did file a section 388 petition but argued at the September 20 hearing that it was not really required because she was already entitled to a contested hearing. The court continued the case to September 25 to hear the merits of the petition but Mother did not appear on that date, although her attorney did.

On September 25 the juvenile court found that reasonable efforts to reunite the minor and his mother had been made but were not successful, that he could not be returned to Mother's custody, that there existed no substantial probability that he would be returned within six months and that he "can or will be adopted." It ordered him referred for adoptive planning and it ordered DCS to transfer his case to the department of adoptions. On October 10, 1989, Mother filed an appeal from the September 25 order for adoptive placement.

### ISSUES ON APPEAL

As a threshold question, we must determine whether the order appealed from is an appealable order. The County asserts that it is not. Mother has ignored the question in her reply brief.

Then, if we can indeed address the propriety of that order, we must determine whether Mother was entitled to a contested hearing when the question of a permanent plan for the minor was addressed.

[4]Section 388 states in relevant part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of [the] court previously made or to terminate the jurisdiction of the court."

## Discussion

1. *Is the September 25, 1989, Order for Adoption Referral an Appealable Order?*

■ Subdivision (j) of section 366.25 provides that an order, made in a permanency planning hearing, that authorizes the filing of a Civil Code section 232 petition to terminate parental rights "is not an appealable order but may be the subject of review by extraordinary writ."[5] Thus, under the plain language of section 366.25, subdivision (j), the order appealed from is not appealable.

Some courts have refused to treat such an appeal as a petition for an extraordinary writ. (*In re Eli F.*, *supra*, 212 Cal.App.3d at p. 236, fn. 6.) Others have given it such status. (*In re Carina C.* (1990) 218 Cal.App.3d 617, 621-622 [267 Cal.Rptr. 205]; *In re Albert B.*, *supra*, 215 Cal.App.3d at p. 372-373.) Like the latter two courts, we believe that conditions support our conclusion that the matter should be heard now.

2. *Was Mother Entitled to a Contested Hearing on the Question of Permanent Placement?*

a. *The Legislature's Scheme for Dependency Hearings*

Under section 361.5, if the juvenile court removes a minor from the custody of his or her parents, the court must order child welfare services for the minor and the parents for the purpose of facilitating reunification of the family. The reunification services are for a maximum period of 12 months except that they can be extended 6 months if it can be shown that the objectives of the service plan can be achieved within that extended period of time. (§§ 361.5, 16507.) "[I]t is open to question whether a court has discretion to order further reunification services after 18 months. (See, e.g., *In re Michael S.* (1987) 188 Cal.App.3d 1448, 1461, fn. 4 . . . .)" (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 81 [261 Cal.Rptr. 462].)

Section 366 mandates continuing judicial review of the status of each child in foster care, with reviews at least every six months. The review times

---

[5] Although the minute order which referred the case to the department of adoptions does not specifically state that Civil Code section 232 was being invoked, a fair reading of the findings made by the court shows that the court meant to proceed under Civil Code section 232. (*In re Albert B.* (1989) 215 Cal.App.3d 361, 372 [260 Cal.Rptr. 453]; *In re Eli F.* (1989) 212 Cal.App.3d 228, 236 [260 Cal.Rptr. 453].)

are calculated from the date of the original dispositional hearing. The reviews continue until the permanency planning hearing[6] is completed. (After the permanency planning hearing is completed, periodic reviews are conducted pursuant to §§ 366.3 and 16503.)

If, at the judicial review hearing, the court finds that returning the child to the custody of his or her parents would create a substantial risk of detriment to his or her well-being, it does not make the return. The court can order additional reunification services. (§ 366.2.)

Under section 366.25, if the minor child has not yet been returned home pursuant to section 366.2, subdivision (e),[7] then the court must hold a hearing to develop a permanent plan for the minor. There are three types of permanent plans—adoption, long-term foster care and legal guardianship. (§ 366.25; *In re Heather P., supra*, 209 Cal.App.3d at p. 889, fn. 5.) The permanency plan hearing is held no later than 12 months after the original dispositional hearing and it can be combined with a section 366 six-month review. (§ 366.25, subd. (a).)

At the permanency plan hearing, the court first determines if the child should be returned to the physical custody of his or her parent, pursuant to subdivision (e) of section 366.2 (see fn. 7, *ante*). If the minor is not to be returned, the court next determines whether there is a substantial probability that the child can be returned within the next six months. If the court makes a finding of substantial probability, it must set another review hearing for not more than six months.[8] Then, if the child is not returned to his or her parents at that next hearing, the court must develop a *permanent* plan for him or her. ■ "There is no provision in the statutes for any permissible further delay in making a permanent plan for a dependent child. At a second, 18-month permanency planning hearing, a court must thus either

---

[6] A permanency planning hearing is conducted pursuant to section 366.25 (covering minors adjudged dependent children of the juvenile court prior to Jan. 1, 1989) or section 366.26 (covering adjudications made on or after that date.) Section 366.25 is applicable here; it is discussed *post*.

[7] Subdivision (e) of section 366.2 provides in part: "The court shall order the return of the minor to the physical custody of his or her parents or guardians unless, by a preponderance of the evidence, it finds that the return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor. The probation department shall have the burden of establishing that detriment."

[8] If the court makes a finding at the 12-months status review/first permanency planning hearing that the minor cannot be returned to his or her parents at that point in time and a further finding that return of the child within 6 months is *not* substantially probable, then the focus of the juvenile court proceedings changes from reunifying the child with his or her parents to making a permanent plan for the child. (§ 366.25, subd. (d); *In re Corienna G., supra*, 213 Cal.App.3d at p. 83.)

order children returned to their parents' custody or, if reunification efforts have failed, make an alternative permanent plan for them." (*In re Corienna G.*, *supra*, 213 Cal.App.3d at p. 84.)

In the instant case, the 12-months review/permanency plan hearing took place in June 1988 and the court found a substantial probability of returning the minor to Mother within 6 months. Therefore, rather than develop a permanent plan for the child, the court continued reunification services and set another hearing for December 1988. Although the court's options (under § 366.25) at that December hearing were to return the minor to the custody of his mother or develop a permanent plan for him, the court ordered that the prior order for suitable placement remain in full force and effect and modified that order to include a 60-day visit for Mother. The court continued reunification services. The court set the next hearing for June 1989. In the interim, the 60-day visit was terminated.

At the next hearing (which was actually held in September 1989), the court made the findings set out in subdivision (d) of section 366.25 and determined that the permanent plan for the minor should be adoption. These findings and the plan were made without a contested hearing.

b. *The Need for a Contested Hearing to Determine a Permanent Plan for the Minor*

The trial court ruled that *In re Heather P.*, *supra*, 209 Cal.App.3d 886, governs this case. We agree. However, while the court ruled that *Heather P.* precluded a contested hearing in September 1989 and required Mother to file a section 388 petition to challenge orders of the court, we hold that *Heather P.* works just the opposite result.[9]

In *Heather P.*, the juvenile court's permanent plan was for placement of the child with her aunt, pending placement in long-term foster care. At a subsequent six-month review (§ 366.3, subd. (c)) the social worker recommended continuing Heather's placement with her aunt and mother contested this recommendation, stating she could present evidence which would warrant returning custody of the minor to her. The juvenile court refused to hear the evidence, saying that under section 366.3, return of a dependent child to parental custody was not within the court's parameters of review but that the mother could petition under section 388 for a change of custo-

---

[9] In its four-page brief on appeal, the County addresses *Heather P.* in one sentence by simply stating that it agrees with the trial court's ruling. No analysis of that case or of the Legislature's scheme for dependency hearings was presented by the County.

dy based on a change in circumstances. The court of appeal affirmed the juvenile court's ruling on those grounds.

The situation in the instant case is quite unlike that in *Heather P.* Here, when Mother was denied a contested hearing, there was as yet no permanent plan in effect. The court had not yet made a plan for adoption, long-term foster care or guardianship. Thus, section 366.3 does not govern this case and it cannot preclude a contested hearing.

We also note what the *Heather P.* court had to say about petitions brought under section 388: "The requirement to petition the court for a hearing must be viewed in the context of the dependency proceedings as a whole. *At each hearing until after the permanency plan, the mother had the right to present evidence that Heather could be returned home safely.* By the time the permanency plan was formed, the court reasonably assumed the mother would not be able to eliminate the problems which required Heather's placement outside her home. *After* the permanency plan it was reasonable to require her to petition the court if she wished to present evidence that her circumstances had changed." (*In re Heather P., supra,* 209 Cal.App.3d at pp. 891-892, italics added.) Thus, *Heather P.* actually supports Mother's assertion that a contested hearing was required. So do *In re Corienna G., supra,* 213 Cal.App.3d at pages 76-77 and *In re Albert B., supra,* 215 Cal.App.3d at page 367, where contested hearings took place to determine a permanent plan for the minors in those cases.[10]

Basic notions of fundamental human rights and fairness compel giving a parent a contested hearing when the options before the juvenile court are returning the child to parental custody or terminating reunification services and determining a plan for permanent placement with another person. We cannot imagine allowing such a decision to be made without input from the child's mother. We view the situation presented here as a matter of substantive and procedural due process. (See, e.g., *Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895, 901-902 [97 Cal.Rptr. 158].) If something happened between the prior judicial review hearing and the September 1989 hearings which warranted adoption rather than returning the child to Mother, should she not be heard to give her side of the story?

We also note that even beyond a chance to present evidence regarding whether the minor should be returned to her, Mother would also need an

---

[10]Mother's failure to return to court for a hearing on her section 388 petition is of no moment since that section is not applicable to her case at this point. As is often stated, the law does not require idle acts.

opportunity to present evidence, if she so desired, as to why something less drastic than termination of her parental rights and placement of her child for adoption would be the best permanent plan. A mother may wish to pursue her own independent reunification efforts, such as counseling and parenting classes as well as visits with her child, with an eye to coming into court at a later point in time and petitioning the court for a return of her child to her custody because circumstances have changed and she is now able to properly care for the child. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1461, fn. 4 [234 Cal.Rptr. 84].)

In summary, denial of a contested hearing on the issue of permanent placement is not permitted.

### c. *The Issue of Prejudice*

The County argues that even if Mother was entitled to a contested hearing, she has not been prejudiced "because the referral for adoption planning includes no assurance that [the County] will ever attempt even to place [the minor] for adoption." The contention is absurd. A parent's fundamental human rights and liberties are not to be dependent on "what ifs" and "maybes." Such a concept is an affront to generally accepted notions of due process.

Nor is the County's other contention of any merit. The County asserts that since a Civil Code section 232 petition to terminate Mother's parental rights involves a full-blown hearing, she will be able to present evidence there. Following the logic of that "let her deal with it later" argument, if a contested hearing can be denied when development of a permanent plan is before the court, why not deny one at each step of the way between the jurisdictional hearing (§ 355) and the permanency plan hearing? Further, if a parent truly has evidence which would warrant returning the child to her custody after the section 366.25 hearing, making the parent wait until a section 232 hearing can be scheduled and completed would be highly inappropriate.

### DISPOSITION

Let a peremptory writ of mandate issue commanding the trial court to set aside its order of September 25, 1989, and conduct a contested permanency planning hearing under section 366.25. If after such a hearing the trial court determines that the minor child should not be returned to his mother's custody and should be referred for adoption, it shall reenter its order of

September 25, 1989, nunc pro tunc to that date. Otherwise, the trial court shall make whatever different orders are appropriate.

Danielson, Acting P. J., and Hinz, J., concurred.