[No. H007667. Sixth Dist. July 27, 1992.]

In re JOANNA Y., a Minor.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Petitioner and Respondent, v.
EILEEN Y. et al., Objectors and Appellants.

[No. H008183. Sixth Dist. July 27, 1992.]

In re TIFFANY Y., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
EILEEN Y. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication only as to INTRODUCTION, DISCUSSION, part I, subdivisions 1A and 1B, and DISPOSITION.

434

## Counsel

James W. Haworth and Mark L. Christiansen, under appointments by the Court of Appeal, for Objectors and Appellants and for Defendants and Appellants.

Steven M. Woodside, County Counsel, and Jan E. Burland, Deputy County Counsel, for Petitioner and Respondent and for Plaintiff and Respondent.

George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minors.

## Opinion

**COTTLE, Acting P. J.—**

### Introduction

Alvia Y. is the father and Eileen Y. the mother of dependent children Joanna Y. and Tiffany Y. ▮▮ In appeal No. H007667, father and mother separately challenge the termination of their parental rights as to Joanna (Civ. Code, § 232) and the termination of reunification services and

visitation as to Tiffany (Welf. & Inst. Code, § 366.22).[1] They argue the court committed reversible error: (1) by finding that reasonable reunification services had been offered to them; (2) by finding that father had been convicted of molesting and murdering a third daughter and had abandoned Joanna; (3) by choosing adoption as Joanna's long-term plan; and (4) by not recusing the district attorney from representing Joanna when that office was prosecuting father.

During the pendency of appeal No. H007667, Tiffany's section 366.26 hearing was held. The court freed Tiffany for adoption and terminated father's and mother's parental rights to her. Each parent timely appealed from the judgment (No. H008183), and we ordered that that appeal be considered with appeal No. H007667.[2] In the latter appeal, mother and/or father contend (1) the evidence at the section 366.26 hearing was unduly limited, (2) there was insufficient evidence of adoptability, (3) the termination rests upon an invalid finding, and (4) the district attorney's office should have been recused. For reasons we shall explain, we conclude that none of the parents' contentions require reversal and, accordingly, we affirm the judgments.

### FACTUAL AND PROCEDURAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION

Although father and mother filed separate appeals, most of their arguments overlap. Where they do not overlap, we will discuss them separately.

---

[1]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code. The order terminating reunification services and visitation with Tiffany and setting a section 366.26 hearing for her to select and implement a plan of adoption, legal guardianship, or long-term foster care is nonappealable. (§ 366.26, subd. (k).) However, because the "appeal" from the referral order was filed prior to our decision in *In re Michelle M.* (1992) 4 Cal.App.4th 1024 [6 Cal.Rptr.2d 172] and to avoid "unnecessarily dilatory and circuitous litigation, [we shall exercise our] power to treat the appeal as a petition for writ of mandate." (See e.g., *In re Carina C.* (1990) 218 Cal.App.3d 617, 622 [267 Cal.Rptr. 205].) Joanna's case is appealable (§ 395) and in her appeal she may raise the inadequacy of a reunification plan. (See *In re Kristin W.* (1990) 222 Cal.App.3d 234, 248 [271 Cal.Rptr. 629], criticized on another ground in *In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 562-563 [283 Cal.Rptr. 483]; cf. § 366.26, subd. (h).)

[2]We have granted the motion to take judicial notice of the files, including our opinions filed in connection therewith, in related cases designated H005335, H005756, and H007199, each of which deals with either Joanna, Tiffany, or father. We take judicial notice, on our own motion, of the juvenile court files in H007667 and H008183.

*See footnote, *ante*, page 433.

I

*No. H007667—Appeal From October 5, 1990, Judgment Terminating Parental Rights as to Joanna and Purported Appeal From October 5, 1990, Order Discontinuing Reunification Services as to Tiffany*

1. *Were Adequate Reunification Services Provided?*

A. *Introduction*

The strong preference of the law in dependency matters, expressed both judicially and legislatively, is reuniting children with their natural families whenever possible. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 843 [278 Cal.Rptr. 185]; § 361, subd. (b).) Although this preference has often been described from the parents' point of view, as supporting the fundamental right to parent one's children, it is a broader concept because it reflects "a cardinal rule of our society that the custody, care and nurture of a child resides first in the parents rather than in a public agency. . . . '[T]he relationship of . . . natural parent . . . [and] . . . children is a vital human relationship which has far-reaching implications for the growth and development of the child. [Citation.] . . . [T]he involuntary termination of that relationship by state action must be viewed as a drastic remedy which should be resorted to only in extreme cases of neglect or abandonment" [citations]. . . . [S]evering the parental relationship [must be] the least detrimental alternative for the child.'" (*In re Jeannette S.* (1979) 94 Cal.App.3d 52, 59 [156 Cal.Rptr. 262]; see *In re Carmaleta B.*, *supra*, 21 Cal.3d at p. 489; *In re Terry E.* (1986) 180 Cal.App.3d 932, 947 [225 Cal.Rptr. 803].) "The Legislature has made it clear substantial efforts should be made to accelerate the rehabilitation of the natural parents . . . ." (*In re Venita L.* (1987) 191 Cal.App.3d 1229, 1241 [236 Cal.Rptr. 859], criticized on another ground in *In re Micah S.* (1988) 198 Cal.App.3d 557, 567, fn. 13 [243 Cal.Rptr. 756] (conc. opn. of Brauer, J.).)

To effectuate this paramount goal of reunification, the law requires that reasonable reunification services, tailored to the parents' individual needs be offered before parental rights may be terminated. (*In re Kristin W.*, *supra*, 222 Cal.App.3d 234, 254-255; *In re Mario C.* (1990) 226 Cal.App.3d 599, 603-604 [276 Cal.Rptr. 548]; *In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1327 [255 Cal.Rptr. 498].) The agency supervising the children must identify the problems leading to the loss of custody, offer services designed to remedy these problems, and maintain reasonable contact with the parents to assist in areas where compliance proves difficult, such as transportation. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414 [286 Cal.Rptr. 592].)

■ On appeal, it is our task to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services designed to aid the parent in overcoming the problems which led to loss of custody were provided or offered. (*In re Mario C.*, *supra*, 226 Cal.App.3d at p. 605; *In re Robert J.* (1982) 129 Cal.App.3d 894, 901 [181 Cal.Rptr. 188].) If such services have not been offered, the court must vacate the permanency planning order, reinstate reunification services, and provide for visitation. (E.g., *In re Kristin W.*, *supra*, 222 Cal.App.3d at pp. 256-257.)

## B. *Reunification Services Offered Father*

■ Father contends that the reunification services offered him were "utterly unworkable and unreasonable" in the following particulars: the requirement he undergo a psychological evaluation was unreasonable in light of the pending special-circumstance murder and child molest charges, and the "no contact" order and "insist[ence]" that mother "totally cut [father] off" were inconsistent with the juvenile law objective of reunifying dependents with their parents and of reunifying families. In order to evaluate these arguments, we will review the history of reunification services offered father.

The initial service plan, dated November 10, 1988, provided: "Mr. [Y], if he wishes to become involved in Joanna's life must: (1) complete a psychological evaluation; (2) attend and complete a parenting class and; (3) become involved in a counseling program with Parents' United." That plan was followed by another, dated November 17, 1988, which included the same requirements for father plus the following additional planned actions: meet with the social worker monthly, submit to a paternity test, have sufficient income and stable living arrangements, resolve the homicide and child molest charges, and refrain from behavior which could lead to new arrests. A subsequent service plan, dated April 13, 1989, incorporated the objectives and actions from the earlier plan. Similar reunification plans were prepared with respect to Tiffany.

On the advice of counsel, father neither signed the plans nor followed through with any of the requirements other than the paternity test and initially attending a parenting class. He refused to speak with Juvenile Probation Officer Nancy Bent and refused to undergo psychological evaluation or counseling. He did this knowing that a psychological evaluation was the sine qua non as to visitation with his children.

Father, in fact, concedes that a psychological evaluation would have been helpful.[9] He nevertheless argues that the court unreasonably withheld visitation pending the evaluation because it was "apparent" he did not comply "only because of the constraints of the criminal case." We find this argument, especially in light of father's earlier concessions as to the importance of the evaluation, unpersuasive.

First, it is well settled that the dependency law statutes do not force a parent in defendant's position from electing between trying to regain custody of his children and defending himself against criminal charges. (§ 355.1.) In construing the predecessor to section 355.1 (§ 701.1), the court held that the privilege against self-incrimination is inapplicable in child welfare proceedings because all relevant evidence should be disclosed to protect the paramount interest of the safety and welfare of the child. (*Collins* v. *Superior Court* (1977) 74 Cal.App.3d 47, 53-54 [141 Cal.Rptr. 273].)

In *In re Katrina L.* (1988) 200 Cal.App.3d 1288 [247 Cal.Rptr. 754], the court held there was no reason to delay juvenile proceedings until the related criminal prosecution against the father was resolved because the father could safely testify in juvenile court without jeopardizing his criminal case under the immunity statute, section 355.7 (now § 355.1), a provision which the court determined survived Proposition 8. The court specifically held that "section 355.1 protect[s] a parent's privilege against self-incrimination since a parent's testimony in a dependency proceeding may not be used in a subsequent criminal prosecution." (200 Cal.App.3d at p. 1296.)

 ▀█ █ In turn, based on analogy to *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], in which the court determined that statements to a probation officer and to a court in a fitness hearing by a minor charged with murder could not be used as substantive evidence against the minor at trial, the court in *In re Jessica B.* (1989) 207 Cal.App.3d 504 [254 Cal.Rptr. 883], held there was use immunity for statements made during court-ordered therapy and the ensuing "presentation to the court of reports by the persons involved in [the father's] therapy" (*id.*, at p. 518) because "such an immunity is essential to the constitutional privilege against self-incrimination and facilitates the goal of

---

[9]He acknowledged that (1) the social workers involved in this case all felt that a necessary part of the reunification plan was that father undergo a psychological evaluation before any other reunification efforts, even alternatives to therapeutic efforts, should be initiated, (2) a psychological examination, according to the doctors involved in the case, would be helpful in assessing mother's ability to protect the children from him and in assessing whether there was a need for such protection, and (3) "there was a reasonable benefit to overall reunification which would have flowed from such an evaluation."

protecting the best interest of the minor and achieving the reunification of the family at the earliest possible date." (*Id.*, at p. 521.)[10]

That the holding in *Jessica B.* should also apply to statements made during a court-ordered psychological evaluation is obvious from the court's general discussion of the issue before it: "Without immunity [the father] is forced to choose between incriminating himself or having little chance of complete reunification with his daughter . . . . If [the father] continues to remain silent in the dependency proceeding on the issue of his intentional abuse, he not only loses his opportunity to present a convincing case for reunification in the dependency proceeding, but also risks that his position of silence on the issue is an indication that he is not cooperating in the reunification process. ' "To force an individual to choose . . . such unpalatable alternatives runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination." ' [Citation.]" (207 Cal.App.3d at pp. 520-521.)

Recently, the Fourth District Court of Appeal made the implicit determination in *Jessica B.* explicit, by holding that parents like father are permitted to make every effort to regain custody of their children without peril because "any admissions [the father] makes during the course of treatment ordered as part of the reunification plan would be immune from use in criminal proceedings which might be brought against him. Accordingly the dispositional order did not infringe upon his right against self-incrimination." (*In re Lamonica H.* (1990) 220 Cal.App.3d 634, 650 [270 Cal.Rptr. 60]; see also *In re Candida S.* (1992) 7 Cal.App.4th 1240 [9 Cal.Rptr.2d 521].)

Father's claim that he "was willing to meet the requirements of the plan following his criminal case" is inconsistent with his concession that judicial proceedings to declare a child free from parental custody and control shall be fully determined as expeditiously as possible. (*In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1223 [259 Cal.Rptr. 863].)

---

[10]The court added the caveat that use immunity would not bar use of statements to the therapist "if the criminal defendant puts such statements in issue through squarely inconsistent testimony at the criminal trial." (*In re Jessica B., supra,* 207 Cal.App.3d at p. 521.) This is because the purpose of use immunity is to secure truthful testimony, not to license perjury. (*Glickstein* v. *United States* (1911) 222 U.S. 139 [56 L.Ed. 128, 32 S.Ct. 71], criticized on another ground in *United States* v. *Apfelbaum* (1980) 445 U.S. 115, 127-132 [63 L.Ed.2d 250, 261-264, 100 S.Ct. 948].) There is no constitutional right to commit perjury. (*United States* v. *Mandujano* (1976) 425 U.S. 564, 584-585 [48 L.Ed.2d 212, 226-228, 96 S.Ct. 1768]; *United States* v. *Wong* (1977) 431 U.S. 174 [52 L.Ed.2d 231, 97 S.Ct. 1823].) As the court stated in *People* v. *Hathcock* (1971) 17 Cal.App.3d 646 [95 Cal.Rptr. 221], "It is axiomatic that a person who had been called to testify as a witness at a trial, and who has sworn to tell the truth, is morally and legally bound to do so. It follows, by necessary implication, that a witness who testifies at trial waives his privilege against self-incrimination as to any question which is thereafter asked to test the credulity of his testimony." (*Id.*, at p. 649.)

Here, the well-being of the children if they visited their father was clearly in doubt. (Father was charged with murdering and sexually molesting Joanna's four-month-old sister, and Joanna claimed he touched his penis to her "butt." Medical evidence corroborated Joanna's claim.) Additionally, any statement father made during a psychological evaluation would be granted use immunity. Under these circumstances, the "no contact" order pending a psychological evaluation was clearly reasonable.[11]

For the same reason, to the extent the plan expected mother to distance herself from father until his safety to the children could be evaluated, the plan was reasonable. We conclude there is substantial evidence in the record that father was offered and provided reasonable reunification services and that it was his failure to comply with the reunification plan and his refusal to participate in evaluation and counseling which made his reunification with Joanna impossible. The trial court is only required to order that reasonable reunification services be provided; it cannot make the parents accept those services. (*In re Jonathan R.*, *supra*, 211 Cal.App.3d at p. 1220.) Where, as here, a parent voluntarily waives reunification services, he gives up his right to complain of their inadequacy.

1. C. - 4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The juvenile court's order as to Tiffany in appeal No. H008183 is affirmed. The order as to Joanna in appeal No. H007667 is affirmed. The petition for a writ of mandate and/or prohibition as to Tiffany, in appeal

---

[11]In any event, no contact orders are appropriate in certain circumstances. For example, in *In re Michael S.* (1981) 127 Cal.App.3d 348 [179 Cal.Rptr. 546], criticized on another ground in *In re Christina H.* (1986) 182 Cal.App.3d 47, 49-50 [227 Cal.Rptr. 41], the court ordered the father, who was being treated as a mentally disordered sex offender, to have no contact with his children upon a potential release from the hospital. The court found substantial evidence in support of the order given that the father had shown no observable progress in his treatment, those treating him recommended separation, the father was a pedophile who had molested his own and other children, and sexual gratification was his primary purpose in adopting two of his children.

*See footnote, *ante*, page 433.

No. H007667, is denied effective on the finality of our decision in the appeal. (Cal. Rules of Court, rule 24(a).)

Bamattre-Manoukian, J., and Stone, J.,* concurred.

A petition for a rehearing was denied August 19, 1992, and appellants' petitions for review by the Supreme Court were denied November 19, 1992.

---

*Judge of the Santa Clara Superior Court sitting under assignment by the Chairperson of the Judicial Council.