[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1501 
OPINION
Kayla W. challenges a juvenile court judgment requiring her to serve 300 days in custody for her contempt of orders that she participate in the Substance Abuse Recovery Management System (SARMS) program. She contends the juvenile court does not have authority to incarcerate parents for substance abuse or coerce substance abuse treatment, and orders related to the SARMS program are unconstitutional and against public policy. She also argues she received ineffective assistance of counsel.
 We hold a challenge to a juvenile court's order regarding contempt of SARMS orders may not be taken by way of appeal, and the exclusive remedy is by a petition for extraordinary writ. We consider Kayla's challenge to the court's order as a writ petition. We conclude her challenge is not moot, and hold the court abused its discretion by imposing a 300-day sentence for her contempt of SARMS orders. We do not discuss her challenges to the constitutionality of the orders or her argument she received ineffective assistance of counsel.
 FACTUAL AND PROCEDURAL BACKGROUND On July 5, 2006, the San Diego County Health and Human Services Agency (Agency) petitioned on behalf of Kayla's child, infant Nolan W., under Welfare and Institutions Code[1] section 300, subdivision (b) on the basis of Kayla's drug abuse. Kayla and Nolan tested positive for amphetamines at the time of Nolan's birth, and Kayla admitted methamphetamine and alcohol use. Kayla had no contact with Nolan's father and did not know how to reach him. The social worker reported Kayla agreed she needed residential substance abuse treatment.
 At the jurisdictional and dispositional hearing on July 25, 2006, the court found the allegations of the petition true, ordered Nolan placed with his maternal aunt and ordered Kayla to enroll in SARMS, advising her that failure to enroll in or attend the SARMS program could result in findings of contempt and for each finding the court could sentence her for up to five days in jail. Kayla signed an acknowledgement that she had received a copy of the order.
 On July 31, 2006, Kayla enrolled in SARMS, but she did not comply with SARMS's requirements, and on September 11 the court issued a bench warrant for her arrest. On October 18 at an ex parte hearing, the court *Page 1503 
terminated her from SARMS because she had been out of contact with the program for more than 60 days.
 In November 2006 the Agency filed a supplemental petition under section 387, seeking to place Nolan in foster care because his aunt was no longer willing to provide care. Kayla appeared at the jurisdictional hearing on December 4. The court found she had 60 counts of noncompliance with SARMS and sentenced her to 300 days in custody, but stayed imposition of sentence on the condition she enroll in and complete a residential program.
 At a hearing on January 8, 2007, Kayla said she planned to enter a residential program that day. However, she did not enter a drug treatment program and at the six-month review hearing on January 24, the court issued a warrant for her arrest, terminated services and set a section 366.26 hearing.
 At a special hearing on February 8, 2007, the court lifted the stay of the previously imposed 300-day sentence and ordered Kayla to serve 300 days in custody. On March 12 the court ordered her released from custody after she had served only 32 days.
 DISCUSSION
I. Writ Review Is the Exclusive Means to Challenge a Judgment of Civil Contempt.
 The Agency argues the appeal was taken from a nonappealable order, and if this court does not dismiss the appeal, the court should treat it as a petition for writ relief. We find merit in the Agency's argument.
 The juvenile court is a superior court of special jurisdiction arising from the juvenile court law. Dependency proceedings are governed by the Welfare and Institutions Code. (In re Chantal S. (1996) 13 Cal.4th 196,200, 205-206 [51 Cal.Rptr.2d 866, 913 P.2d 1075].) Section 213 provides that willful disobedience or interference with a lawful order of the juvenile court constitutes contempt of court. Section 395, subdivision (a)(1) provides: "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment. . . ."
 However, these provisions of the Welfare and Institutions Code do not mean that an appeal may be taken from a juvenile court's judgment of contempt. In finding a parent in contempt of court for noncompliance with SARMS orders, a juvenile court is exercising the traditional authority inherent in the court. "`It is well established that a court has inherent power to *Page 1504 
punish for contempt of court [citation].'" (In re Michael G. (1988)44 Cal.3d 283, 288 [243 Cal.Rptr. 224, 747 P.2d 1152].) Although in enacting section 213 the Legislature specifically recognized that a juvenile court retains traditional contempt powers, that power exists independent from legislative sanction and is part of its inherent power to conduct court business and enforce its lawful orders. (In re MichaelG., supra, 44 Cal.3d at pp. 288-289.)
 Proceedings involving contempt of SARMS orders are related to the dependency proceedings in a case, but they are not strictly dependency proceedings. They are ancillary proceedings with their own set of rules and procedures. Referring to civil contempt proceedings, the appellate court in Oil Workers Intl. Union v. Superior Court (1951)103 Cal.App.2d 512, 570 [230 P.2d 71] stated: (3) "[A civil contempt proceeding] is a special proceeding, criminal in character, governed by the provisions of the Code of Civil Procedure, not by those of the Penal Code; not for the punishment of an offense against the state, but intended to implement the inherent power of the court to conduct the business of the court and enforce the lawful orders of the court."
 Because civil contempt proceedings are not integral to the dependency case, but ancillary proceedings and criminal in nature, review of a contempt judgment in a dependency matter is governed not by the Welfare and Institutions Code, but by procedures for ordinary civil contempt found in sections 904.1, 1218 and 1222 of the Code of Civil Procedure.
 The penalties for violations for civil contempt are set out in Code of Civil Procedure section 1218. (In re Ricardo A. (1995)32 Cal.App.4th 1190, 1199 [38 Cal.Rptr.2d 586].) Code of Civil Procedure section 1218, subdivision (a) states: "Upon the answer and evidence taken, the court or judge shall determine whether the person proceeded against is guilty of the contempt charged, and if it be adjudged that he or she is guilty of the contempt, a fine may be imposed on him or her not exceeding one thousand dollars ($1,000), payable to the court, or he or she may be imprisoned not exceeding five days, or both."[2]
 Code of Civil Procedure section 904.1, subdivision (a)(1) provides that review of a judgment of contempt may not be taken by appeal. It states in part: *Page 1505 
 "(a) . . . An appeal, other than in a limited civil case, may be taken from any of the following:
 "(1) From a judgment, except . . . (B) a judgment of contempt that is made final and conclusive by [Code of Civil Procedure] Section 1222. . . ."[3]
 The procedures for challenge to any judgment of civil contempt require writ review because it is vital that an order of incarceration be reviewed promptly. The writ process ensures timely resolution of the issue. Allowing review of a civil contempt judgment in a dependency case to go by way of appeal would virtually guarantee that the matter would not be reviewed before the time the parent was required to serve had ended. Delay would also ensue if the sentence were stayed, and appellate review might well not occur until after termination of parental rights.
 We hold that review of a judgment of contempt for violation of SARMS orders may only be reviewed in the same manner as other civil contempt judgments. The exclusive remedy is a petition for extraordinary writ relief. Instead of dismissing Kayla's appeal, however, we exercise our discretion to treat her appeal as a petition for extraordinary writ relief. (See In re Carina C. (1990) 218 Cal.App.3d 617, 622 [267 Cal.Rptr. 205]; Melinda K. v. Superior Court (2004)116 Cal.App.4th 1147, 1150, 1157 [11 Cal.Rptr. 3d 129].)
II. Kayla's Challenge Is Not Moot.
 The Agency argues that because Kayla was released from custody on March 12, 2007, and her parental rights were terminated on May 22, 2007, the issues she raises are moot and this court can grant no relief. An appellate court will not review questions which are moot and only of academic importance, nor will it determine abstract questions of law at the request of a party who shows no substantial rights can be affected by the decision. (Reefer v. Reefer (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856].) An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. (In re JessicaR. (2000) 79 Cal.App.4th 1313, 1315-1316 [94 Cal.Rptr.2d 798].)
 Here, Kayla's contentions are technically not moot because, although she has been released from custody and her parental rights have been terminated, when the court ordered her released after serving only part of her 300-day *Page 1506 
sentence, it did not vacate the original order. Also, the order terminating her parental rights is not final because she has appealed that order and the opinion dismissing her appeal from that order is not yet final.[4] We thus consider the propriety of the court's order requiring her to serve 300 days in custody for contempt.
III. The Court Abused Its Discretion in Sentencing Kayla for Contempt of SARMS Orders.
 Kayla contends the court's judgment of contempt and resulting sentence are unconstitutional and against public policy. We decline to address these arguments. It is a well-established principle that a reviewing court will not decide constitutional issues where other grounds are available and dispositive of an issue. (Santa Clara County LocalTransportation Authority v. Guardino (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225]; Palermo v. Stockton Theatres, Inc.
(1948) 32 Cal.2d 53, 66 [195 P.2d 1].) Because the order requiring Kayla to serve 300 days in custody for her contempt of SARMS orders shows a clear abuse of the court's discretion, we decide the matter on that basis.
 The purpose of SARMS orders is to ensure the parent refrains from drug use and complies with his or her treatment program. The punitive component of SARMS is intended as an incentive for the parent to remain sober and to avoid relapse. "`[C]ivil contempt, as contrasted with criminal contempt, has traditionally been viewed as non-punitive, for its purpose is only to compel compliance with a lawful order of the court. . . .'" (People v. Batey (1986) 183 Cal.App.3d 1281, 1285 [228 Cal.Rptr. 787].) "[A] civil-coercive contempt order is one which, although it may have punitive aspects, has as its main purpose the coercion of compliance with the court's order." (Id. at p. 1288.)
 On December 4, 2006, the juvenile court explained to Kayla that she could request a hearing and require that her contempt be proven beyond a reasonable doubt. She agreed to give up her rights to a hearing and admitted 60 counts of contempt. The court then sentenced her to 300 days in custody, and stayed that term on the condition that she enroll in a residential program. On February 8, 2007, because Kayla had not entered a treatment program, the court lifted the stay and ordered Kayla to serve 300 days in custody.
 By the time of the February 8 hearing, Kayla had been terminated from SARMS and her reunification services had been terminated. It is clear *Page 1507 
that the court's purpose in imposing sentence was to punish Kayla for breaking her promise to enroll in residential treatment, not to coerce her into complying with the court's orders, refrain from drug use and work toward reunifying with Nolan. The order shows an abuse of the court's discretion. Given our holding, we do not reach Kayla's argument that she did not receive effective assistance of counsel.
 DISPOSITION The judgment of contempt is annulled.
 McIntyre, J., and O'Rourke, J., concurred.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] The Superior Court of San Diego County, Local Rules, rule 6.1.19, which deals with the SARMS program, similarly provides that after the first "noncompliant" event, "[f]or each subsequent violation, the parent will be cited for contempt of court for disobeying a court order; a finding of contempt may result in a fine and/or incarceration for up to five days."
[3] Code of Civil Procedure section 1222 provides: "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive."
[4] At oral argument, the parties recognized that on November 8, 2007, this court dismissed Kayla's appeal from the order terminating her parental rights. (In re Nolan W. (Nov. 8, 2007, D051228) [nonpub. opn.].) The opinion dismissing her appeal will be final as to this court on December 8, 2007. (Cal. Rules of Court, rule 8.264(b)(1).) *Page 1508